S. L. STAPLES, SECRETARY OF STATE, V. STATE OF TEXAS, EX REL. C. E. KING, ET AL.

No. 3865. Decided October 27, 1922.

(245 S. W., 639.)

### 1.—Quo Warranto—Elections—Construction of Statute—Right to Represent State—Jurisdiction of District Court.

The Act of March 20, 1919, Laws, 36th Leg., ch. 88, p. 139, limiting expenditures of money to promote or defeat the candidacy of persons for nomination for office in primary elections, provides that the person offending its provisions shall forfeit thereby his right to have his name placed on the official ballot if nominated in such primary; and that proceedings by *quo warranto* to determine his right to a place on the ticket may be instituted at suit of any citizen in any District Court. Such proceeding in the name of the State having been brought against a candidate and officers of the State by citizens having no interest therein save as citizens and represented by their own counsel, not by the county or district attorney, it is held:

(1) The authority conferred on "any citizen" by such Act is to be construed and applied in connection with the "proceedings by *quo warranto*" which they were authorized to bring as the same were recognized by our jurisprudence when the law was enacted. (p. 67).

(2) *Quo warranto* proceedings are those in which the State acts to protect itself and the public generally through the duly chosen agents of the State, as provided by its Constitution and laws. (p. 67).

(3) By Article 4, section 22, and article 5, section 21, of the Constitution the county and district attorneys and the Attorney-General are the only officers authorized to institute proceedings on behalf of the State and to represent it as a party to litigation; and this applies to *quo warranto* proceedings in the name of the State, though brought at the instance of unofficial relators authorized so to do by such statute. (pp. 68, 69).

(4) Relators herein were not possessed of legal capacity or right to institute and maintain such suit. It must, though on their relation, be brought by the county or district attorney and be subject to his control. (p. 73).

(5) As above construed section 9 of chapter 88, of the Acts of the 36th Legislature is not in violation of article 5, section 21, of the Constitution, and is valid. (p. 73).

### 2.—Constitutional Law.

The courts, when a statute is susceptible of a construction which will not render it in conflict with the Constitution, will give it such effect as sustains its validity. (pp. 69-71).

### 3.—Cases Discussed.

Maud v. Terrell, 109 Texas, 97; City of San Antonio v. Strumberg, 70 Texas, 366; Matthews v. State, 82 Texas, 577; State ex rel. Smith v. Broach, 35 S. W., 86; State ex rel. Cavanaugh v. Nelson, 170 S. W., 814; discussed and followed. (pp. 70-72).

### 4.—Certified Question—Jurisdiction.

On certified question involving the jurisdiction of the trial court which had issued an injunction affecting the rights of candidates at an approaching election, the Supreme Court, having held the trial court to be without jurisdiction, will not only certify their ruling to the Court of Civil Appeals for judgment by it in accordance therewith, but, for the protection of its own jurisdiction, may certify to the trial court its order that such court proceed no further in the case pending such entry of judgment. (pp. 73, 74).

Questions certified from the Court of Civil Appeals for the Fifth District, in an appeal from Navarro County.

*W. A. Keeling,* Attorney-General, and *John C. Wall* and *L. C. Sutton,* Assistants, for S. L. Staples, Secretary of State, and the various official boards. *Hart & Patterson,* and *Phillips, Trammell & Caldwell,* for Earle B. Mayfield. *David B. Trammell,* for Hugh Small, County Judge, and others constituting the Official Board of Tarrant County.

It being expressly provided that the enforcement of the provisions of Section 9, of Chapter 88, General Laws, Regular Session, 1919, should be by *quo warranto* proceedings, it became, by the express provisions of Article 6398 of the Revised Civil Statutes of 1911, a prerequisite to the filing of such proceedings that they be brought by the Attorney General, or the District Attorney, or County Attorney, and no authority is conferred upon any other person to bring or prosecute such an action. Therefore the instant proceedings, not having been brought by the Attorney General, or the District or County Attorney of any County, were wholly unauthorized, and the District Court of Navarro County had no jurisdiction or authority to entertain such suit, or to issue the temporary writ of injunction herein issued, restraining the Secretary of State and other officials of the State of Texas from performing duties required of them by law. This is especially true since the relators do not claim to be entitled to the nomination from which they seek to exclude Mr. Mayfield, or show any other invasion of a private, as contradistinguished from a public, right:

(a) The only method of testing the forfeiture by a candidate of his right to appear on the ballot is by *quo warranto* proceedings: Sec. 9, Chap. 88, General Laws, 1919, Regular Session, p. 144; Art. 3174¼b Vernon's 1922 supplement.

(b) The state is a necessary party to a *quo warranto* proceeding: State v. Nelson, 170 S. W., 814; Pickett v. Abney, 84 Texas, 645, 19 S. W., 859; 32 Cyc., 1432; State v. Ryan, 125 Pac. (Utah), 666, 41 Utah, 327; People v. Hanson, 290 Ill., 370, 125 N. E., 268; State v. Taylor, 208 Mo., 442, 106 S. W., 1023; 13 Ann. Cas., 1058; Porter v. People, 182 Ill., 516, 55 N. E., 349; Haupt v. Rogers, 170 Mass., 71, 48 N. E., 1080; Meehan v. Bachelder, 73 N. H., 113, 6 Ann. Cas., 462.

(c) Only the Attorney General, District Attorney or County Attorney has the right to file a *quo warranto* proceeding, and such officer so filing such proceedings has the exclusive control thereof: Matthews v. State, 82 Texas, 577, 18 S. W., 711; Hunnicutt v. State, 75 Texas, 233, 12 S. W., 166; State v. Nelson, 170 S. W., 814; State v. Roach, 35 S. W., 86; People v. Hanson, 290 Ill., 370, 125 N. E., 268; State v. Taylor, 208 Mo., 442, 106 S. W., 1023, 13 Ann. Cas. 1058; Porter v. People, 182 Ill., 516, 55 N. E., 349; Haupt v. Rogers, 170

Mass., 71, 48 N. E., 1080; Meehan v. Bachelder, 73 N. H., 113, 6 Ann. Cas., 462; High's Ex. Leg. Rem., 509; 32 Cyc., 1432; Art. 368, Revised Civil Statutes.

(d)   Even where the law permits a direct suit between private parties for the recovery of an office, where *quo warranto* proceedings are resorted to, the statute requiring the information to be sued out at the instance of the state's attorney, must be followed: Mc-Allen .v. Rhodes, 65 Texas 348.

(e)   Title 114 of the Revised Civil Statutes providing for *quo warranto* proceedings, and Section 9, Chapter 88 of the General Laws, 1919, Regular Session, being statutes *in pari materia,* must be construed together as one Act: Conley v. Daughters of the Republic, 106 Texas 80, 156 S. W., 197, 157 S. W., 937; Beene v. Waples, 108 Texas, 140, 187 S. W., 191; Neal v. Keese, 5 Texas 23; Hanrick. v. Hanrick, 54 Texas, 101; Kampman v. Tarver, 87 Texas, 491, 497, 29 S. W., 468; Duncan v. Taylor, 63 Texas, 645; Williams v. Keith, 111 S. W., 1056, 112 S. W., 948.

(f)   The Legislature, in providing for *quo warranto* proceedings in Section 9, Chapter 88, Acts of 1919, must be presumed to have used the words in their ordinary sense, and as referring to the statutory proceeding already provided for by previous laws: State v. Smith, 55 Texas, 447; Turner v. Cross, 83 Texas, 218, 18 S. W., 578; Texas & Pacific Ry. Co. v. Railroad Commission of Texas, 105 Texas 386, 150 S. W., 878.

(g)   If the statute authorizes a suit on behalf of the State by "any citizen" alone, it is unconstitutional, since under the Constitution only the Attorney General, or district or county attorney, may represent the State: Sec. 21, Art. 5, Constitution of Texas; Sec. 22, Art. 4, Constitution of Texas; Maud v. Terrell, 109 Texas, 97, 200 S. W., 375.


*W. W. Nelms, J. S. Callicutt, Richard Mays,* and *Luther Nickels,* for appellees.

The State—or the public at large—is not interested in subject-matter of suits for forfeiture brought under Section 9, Chapter 88, Acts of 1919. Waples v. Marrast, 108 Texas, 5; Koy v. Schneider, 110 Texas, 369; Westerman v. Mims, 111 Texas, 29.

Whatever rights Mayfield may have, or claim, in or to, or with respect to, the nomination or a place on the "Official Ballots," are mere private rights, and they are, primarily. of concern or interest (in a legal sense) only to himself or his (political) party (Waples v. Marrast, Koy v. Schneider, supra); but, where ground of "forfeiture" exists, they become of interest and concern (legally) to any "citizen" who cares, or desires, to bear liability for costs in bringing a suit for forfeiture,—Section 9, Chapter 88. This right of the "citizen" is an enforcible legal right because it is conferred by

written law: Waples v. Gilmore, 108 Texas, 167, 176; Westerman v. Mims, 111 Texas, 29.

The terms of Section 9, qualify King, etc., to maintain the suit and foreclose inquiry as to the quantum or nature of his interest or injury. Section 9, Chapter 88. The general rule requiring a special "interest" or "injury" to be pleaded and proved is a rule of the Common Law—or of decision—and the Legislature was competent to change or restrict the rule—as it did—by the terms of section 9. Union Pac. R. Co. v. Hall, 91 U. S., 355; 18 R. C. L., p. 325, sec. 273, pp. 326, 327, sec. 274; Giddings v. Secy. of State, 93 Mich., 1.

Section 21 of Article V of the Constitution does not require Section 9 to be so construed as to require the action of the County Attorney and does not render Section 9 unconstitutional: Section 21, of course, requires representation by the County Attorney in a case where the State is the real party at interest—this, we think, is the right intendment of Terrell v. Maud—and other cases, cited by counsel for appellants.

Section 9, of Chapter 88, and Article 6398, R. S. 1911, are not *in pari materia*: Section 9 deals with rights and remedies in which the State—or the public at large—is not interested. While every provision of Article 6398, obviously deals with a matter in which the State,—and the public at large is legally interested. Section 9— broadly—relates to a "nomination;" Article 6398 relates to an "Office," etc.; the two statutes, therefore, relate—essentially—to different, distinct things."

The *pari materia* idea is never used to defeat the Legislative intent or will; its application here, to the extent demanded by appellants at least, would render senseless and ineffective a substantial part of section 9. That section literally vests the "citizen" with the legal right and capacity to sue—the right, so vested, is not conditioned upon favorable action, or joinder, by an officer. To require, through construction, such official action, or joinder, is to make the "citizen's" right (otherwise absolutely vested) depend upon the will on the officer. The construction contended for, in effect, would give the Attorney General, or the County Attorney, the power to suspend the law and render it ineffective—and this power cannot be validly given.

In Rhodes v. McAllen, 65 Texas, 348, it is clearly stated that, even where a public office is involved, the relator "is the real plaintiff and the position of the State is that of a nominal party;" "practically," says the court, "the State's attorneys take no part in the proceedings, and the plaintiff's side of the case is represented by the relator's counsel alone, etc." How much more is the mere formality or technicality of the State's position where a mere "nomination" is involved—a matter in which the State as a Sovereign is

not interested at all. Koy v. Schneider, Waples v. Marrast, Westerman v. Mims, supra.

The subject-matter, being intrinsically private and nongovernmental, and the rights involved being legal personal ones, the case is justiciable as an ordinary suit between individuals. Gilmore v. Waples, 108 Texas, 167.

MR. JUSTICE PIERSON delivered the opinion of the court.

Appellees, C. E. King, P. C. Short, and L. E. McGhee, brought this suit in the District Court of Navarro County to prevent the name of Earle B. Mayfield from appearing on the official ballot in the approaching general election as the nominee of the Democratic Party for the office of United States Senator. They brought the suit in a proceeding by *quo warranto* in the name of The State of Texas upon their relation, and in their own names, under Section 9 of Chapter 88 of the Acts of the 36th Legislature. They alleged that said Mayfield had violated provisions of said Chapter 88 in securing the nomination, in that he had expended more than the legal limit of $10,000 as therein provided may be lawfully spent in securing such nomination, and alleged other violations of said Chapter.

Permission having been obtained from the District Judge of the Thirteenth District, the Honorable Hawkins Scarbrough, the petition was filed. Also, a temporary injunction was issued restraining the appellant Secretary of State and other election officers from certifying or placing the name of said Mayfield upon the official ballot.

Appellants appealed from the order granting said temporary injunction to the Court of Civil Appeals for the Fifth Supreme Judicial District at Dallas, and the case is here upon certified questions from that court. By order of the District Judge, the temporary injunction remained in full force pending appeal.

The only allegation of any right or interest in the subject-matter of the suit in appellees' petition personal to them is that of citizenship. It is nowhere shown in the petition that any County Attorney or District Attorney of the State or the Attorney General consented to or joined in the suit.

For the sake of brevity, we will restate the questions certified as follows:

I. Were the appellees possessed of the legal capacity and have they the right to institute and maintain this suit under Section 9 of Chapter 88 of the Acts of the 36th Legislature?

2. If so, is said Section 9, in so authorizing and empowering said appellees to bring and maintain this suit, in either their own names or in the name of the State, in violation of Section 21, Article 5, and Section 22, Article, 4, of the Constitution of Texas?

112 Tex.—5

The jurisdiction of the District Court of Navarro County or of the District Judge in this case is dependent upon the answers to these questions. The answers to these questions do not in any sense bear upon the merits of the fact issues raised in appellees' pleadings, but only upon their right to bring and maintain the suit in their individual capacities, or in behalf of the State.

Chapter 88 is "An Act to prevent the control of primary elections by the use of money, and to regulate and limit the expenditure of money to promote or defeat the candidacy of persons for nomination for office in primary elections in this State, and providing penalties for violation of this Act, and declaring an emergency."

Section 9 of Chapter 88 reads as follows:

"Sec. 9. If any candidate shall knowingly violate any of the provisions of this Act or shall knowingly permit or assent to the violation of any provision of this Act by any campaign manager or assistant campaign manager or other person, he shall thereby forfeit his right to have his name placed upon the primary ballot or if nominated in the primary election, to have his name placed on the official ballot at the general election, and proceedings by *quo warranto* to enforce the provisions of this section or to determine the right of any candidate (s) alleged to have violated any of the provisions of this Act to have his name placed on the primary ballot or the right of any nominee alleged to have violated any of the provisions of this Act to have his name placed upon the official ballot, for the general election may be instituted at the suit of any citizen in the District Court of any County, the citizens of which are entitled to vote for or against any candidate who may be charged in such proceedings with having violated the provisions of this Act. All such proceedings so instituted shall be advanced and summarily heard and disposed of by both the Trial and Appellate Courts."

Section 22, Article 4, of the Constitution, provides that the Attorney General of the State shall represent the State in certain causes, and Section 21, Article 5, of the Constitution, among other provisions, provides: "The county attorneys shall represent the State in all cases in the district and inferior courts in their respective counties." It also makes provision for the duties of the district attorneys.

It is admitted by appellees that they have no pecuniary interest in this suit which is not common to all other citizens of the State.

Appellant, Secretary of State, Staples, through the Attorney General, maintains that the Section is valid, and that under its proper construction appellees are not entitled to bring and maintain this suit, because not participated in by a properly authorized officer or agent of the State, to-wit: any County Attorney or District Attorney or the State's Attorney General.

Appellants Mayfield and the Tarrant County Election Board contend that said Section, if construed as contended for by appellees, is void and is in violation of Section 21, Article 5, and Section 22, Article 4, of the State Constitution, in that it authorizes private citizens, without interest in the law's enforcement different from that of every other citizen, to bring and prosecute a *quo warranto* suit without the participation of a County Attorney or District Attorney or the Attorney General.

The appellees, King et al., earnestly insist that the Section is valid and constitutional and creates the *legal right* in any citizen to bring and prosecute the specified suit for himself and in his own behalf, without having any interest in the subject-matter of the suit different from all other citizens of the State, and without the consent or participation of the County Attorney or District Attorney or Attorney General, or of any other authorized officer of the State provided by law; and that the Legislature thus created in each citizen a private right or interest, even though none existed before, and that this private right or interest could be maintained in a proceeding by *quo warranto,* and that the people at large, that is the State as a sovereignty, is not interested in the subject-matter or result of the litigation.

In obedience to the command of the statute that the case be "advanced and summarily heard and disposed of by both the Trial and Appellate Courts," the full court being in perfect accord in the decision herein, we will, without extensive elaboration, state the principles upon which our decision is based. The principles that control the case are fundamental and well established, and are supported by usage of long standing and by an unbroken line of decisions in this and other jurisdictions.

The important expressions in Section 9 are: "proceedings by *quo warranto,*" and "at the suit of any citizen."

The authority conferred upon "any citizen" must be construed and applied in connection with the authorized "proceedings by *quo warranto.*" The proceedings by *quo warranto* had an established and well known meaning and application in our jurisprudence, and it must have been in the light of this well known meaning, as established by the courts of this State and of other jurisdictions, that the Legislature enacted Section 9.

*Quo warranto* proceedings are those through which the State acts to protect itself and the good of the public generally, through the duly chosen agents of the State as provided by the Constitution of the State and under the laws thereof, though sometimes brought at the instance of and for the benefit of a private individual who may have a special interest. This being the fact, and this being the setting, we must give effect to the statute as it reads in the light of the well known meaning of the term "proceedings by *quo warranto*" at the time the Legislature used it in this Section of the Statute,

and construe the phrase "at the suit of any citizen" in connection therewith. Thus ascertaining the intent of the Legislature, it is clear that Section 9 means that at the instance of, or on solicitation of, any citizen, proceedings by information in the nature of *quo warranto* may be instituted, through the proper officer of the State, to determine the right of any candidate charged with a violation of the Act to have his name placed on the official ballot. In so construing this Section, it is not in conflict with Section 21, Article 5, and Section 22, Article 4, of the Constitution, in which it is provided that the county attorneys and districts attorneys and the Attorney General shall represent the State.

It must be presumed that the Legislature desired and intended to enact a constitutional law. It will be presumed to have enacted this Section in the light of Section 21, Article 5, and Section 22, Article 4, of the Constitution, which provide that the county attorneys, district attorneys, and Attorney General shall represent the State in all cases. Where the suit is for the benefit of the public at large, and no citizen is affected differently from all other citizens, the State as an agent of all is properly interested for the benefit of all its citizens. Now, the Legislature having in mind these provisions of the Constitution, enacted Section 9, providing that the wrongs and abuses therein mentioned, being essentially public wrongs, could be corrected at the suit of any citizen by *quo warranto*, the recognized procedure used by the State through its authorized agents for the benefit of all the people.

The chief contention of appellees is that the State, the County, or the public at large is not interested in the rights involved nor in the relief sought. If that be true, the fact appearing without controversy that appellees sustain no relation to the subject-matter of the suit different from every other citizen of Texas, then there is no actionable interest shown, and there would be no reason to authorize them to maintain the suit under established canons of law. They present that Section 9 creates a legal right in them though they have no interest different from all other citizens of the State, and that by the terms of said Section they are invested with a private right, even though none existed theretofore, and that, regardless of the State and its authorized agents, this private right, thus created, authorized them to bring and prosecute this suit.

While the proceedings must be founded on an information alleging, and on evidence establishing, condemned practices in the primary election, yet that which is regulated is the ballot in the general election, and the supreme purpose of the Section is to protect the purity of the general election and to withhold the aid of the State in the election to office of those who may have offended the public policy of the State.

The conclusion is unavoidable that the purpose of the law is to protect the public at large. It must be so held. Individual rights and remedies were already well protected and provided for.

It is contended here that the State as an entity or political sovereignty is not interested in the result of any primary election. The State as such entity and sovereignty is certainly interested in the enforcement of its laws, in the purity of the ballot and the sanctity of general elections, and in the final outcome as developed by the general election. This is sufficient interest upon which to base this legislation and for the enforcement of which the Legislature might provide a remedy by *quo warranto* in the name of the State, as it did in this instance.

The suits of private citizens contesting the right of a possesssor to hold a public office that have been sustained have been cases where the party bringing the suit had an interest in the subject-matter above and different from the commonalty of citizens, and his rights were such that he was permitted to maintain a civil action to protect them.

It is necessary for the State to be a party where the action is for the benefit of the public at large, though growing out of a party primary election. The statute cannot confer a right upon private individuals to act for all where it is shown they have no interest different from all others. Section 21, Article 5, and Section 22, Article 4, Constitution of Texas.

We will briefly discuss the law as to *quo warranto* proceedings. We deem it unprofitable to review the origin and development of this ancient writ, and will refer only to applications made of it in modern times and by our courts.

That it was the legislative intent that the usual procedure by *quo warranto* should here be followed—that of an action brought by a county attorney or a district attorney or the Attorney General, upon the relation of any citizen—is supported not only by the fact that this procedure had a well defined *status* under all the decisions at the time the Legislature enacted Section 9, but is further strengthened by Article 368, Revised Statutes, which Article the Legislature is presumed to have had in mind. That Article reads as follows:

"It shall be the duty of district and county attorneys to institute and prosecute *quo warranto* proceedings against persons and corporations in such cases and under such circumstances as are prescribed in article 6403 herein, and in such other cases as may be prescribed by law."

Section 9 comes under the clause "and in such other cases as may be prescribed by law."

This is the natural construction of Section 9 taken as a whole, giving full force to the phrases "at the suit of any citizen" and "proceedings by *quo warranto*."

To give the Section the meaning contended for by appellees would be to seriously infringe upon the mandate of Section 21, Article 5, of the Constitution, that "the county attorneys shall represent the

State in all cases in their respective counties,'' and of Section 22, Article 4, relating to the Attorney General.

The holding of this court in Maud v. Terrell, 109 Texas, 97, 200 S. W., 375, opinion by Chief Justice PHILLIPS, is to the effect that the Legislature is without authority under the Construction to restrict the exclusive powers of the county attorneys or district attorneys and the Attorney General to represent the State. Judge PHILLIPS says:

''That instrument, (the Constitution) by section 21 of article 5, lodges with the county attorneys the duty of representing the State in all cases in the District and inferior courts, with the right in the Legislature to regulate by law the respective duties of district and county attorneys where a county is included in a district having a district attorney; and by section 22 of article 4 that duty as to suits and pleas in the Supreme Court is confided to the Attorney General. With the limitation existing in the authority of the Legislature, under section 22 of article 4, to create additional causes of action in favor of the State and entrust their prosecution, whether in the trial or in the appellate courts, solely to the Attorney General, the powers thus conferred by the Constitution upon these officials are exclusive. The Legislature cannot devolve them upon others. Nor can it interfere with the right to exercise them. Brady v. Brooks, 99 Texas, 366; Harris County v. Stewart, 91 Texas, 133; State v. International & G. N. R. R. Co., 89 Texas, 562. It may provide assistance for the proper discharge by these officials of their duties, but since in the matter of prosecuting the pleas of the State in the courts the powers reposed in them are exclusive in their nature, it cannot, for the performance of that function, obtrude other persons upon them and compel the acceptance of their services. Wherever provision is made for the services of other persons for this express purpose, it is the constitutional right of the Attorney General and the county and district attorneys to decline them or not at their discretion, and, if availed of, the services are to be rendered in subordination to their authority.''

Again he says:

''The presumption is that the Legislature acted in the light of the Constitution, with the intention to observe it rather than violate it. Where the language of the particular enactment is unambiguous and the conflict with the Constitution is hence apparent, there is no alternative but to declare the enactment void. In such cases words cannot be read into a statute or out of it to save it. But where the language is of doubtful meaning, reasonably susceptible of different constructions, rendering the Act valid if construed in one sense and invalid if construed in another, that construction will be adopted which sustains the Act rather than destroys it. Likewise, where the terms used in a statute are general, reasonably admitting of a construction which does not condemn it, the lan-

guage will be restrained in its operation so as to harmonize the statute with the Constitution, though, literally, it be susceptible of a broader meaning which would conflict with the Constitution. These are just and wise rules. They are of general application. They exist because courts are not to sit as severe and anxious critics of legislative expression, or as censors of the form in which statutes are written. It is the duty of courts to see that the Constitution is observed in the enactment of laws, and to fearlessly declare a law void which violates the Constitution. But these rules are for their guidance as an injunction that the language used in the writing of statutes is not always precise; that frequently terms of doubtful meaning are employed; that where this is true and the terms used reasonably admit of it, that construction is to be applied which will uphold the law; and that it is only where the language plainly contravenes the Constitution are they warranted in holding a law invalid."

In applying these rules of construction to that case Judge PHILLIPS uses the following language:

· "The character expressly given by the Act to the person thus employed is that of an assistant for this purpose to the duly constituted public officials. . . . It (the Act) undeniably is open to the construction that the person employed pursuant to its provisions may assist in the prosecution of suits for taxes, but it cannot be said to require a construction that his action in this regard shall serve to displace those officials in the exercise of their constitutional powers."

In San Antonio v. Strumberg, 70 Texas, 366, 7 S. W., 754, Judge GAINES, speaking for the court, said:

"It was objected in the court below, and is insisted here, that the plaintiff showed no such interest as authorized him to bring this suit, and if this ground be well taken the judgment must be reversed. We think it a principle established by the overwhelming weight of authority in the courts of all countries subject to the common law, that no action lies to restrain an interference with a mere public right, at the suit of an individual who has not suffered or is not threatened with some damage peculiar to himself. As applied to public measures the doctrine is elementary. (2 Cooley's Blackstone, 219). For a special damage resulting from the invasion of a right enjoyed by a party in common with the public, the law affords him a remedy by private action, but if the damages be only such as are common to all, the action must be brought by the lawfully constituted guardian or guardians of the public interest. The principle has been frequently applied in this court to another class of cases, and the right of an individual to sue without showing some special damage, either suffered or threatened, has been uniformly denied. (Walker v. Tarrant Co., 20 Texas, 16; Harrell v. Lynch, 65 Texas, 146; Caruthers v. Harnett, 67

Texas, 127; Worsham v. Richards, 46 Texas, 441. . . . It has been intimated that the reason this rule was established was in order to prevent a multiplicity of suits, which might result if each individual were permitted to sue for damage resulting from a public nuisance which was common to all others; but we apprehend that the underlying principle is that individuals have a right to sue for a redress of their own private injuries, but for such as affect all the public alike he is not the representative of the public interest.''

In Matthews v. State, 82 Texas, 577, 18 S. W., 711, Associate Justice HENRY says:

''A relation under oath may properly be relied upon as the sole ground for beginning and permitting the prosecution of the case; but it does not result from this that the conduct and continued prosecution of the cause is any less under the exclusive control of the State's attorney and the court than it would have been if, upon facts sufficiently well known by the State's officer without the aid of an affidavit, it had been begun by the officer upon his own motion.''

In State ex rel. Smith v. Boach et. al., 35 S. W., 86, the Court of Civil Appeals, through Chief Justice GARRETT, used the following language:

''When *quo warranto* has been brought at the relation of a private party, the relator becomes responsible for the costs of the suit. 19 Am. & Eng. Enc. Law, 685, and note 3. But, although the private relator is responsible for setting the information in motion, the conduct and continued prosecution of the cause is under the exclusive control of the state's attorney and the court. Mathews v. State, 82 Texas, 581, 18 S. W., 711.''

In State ex rel. Cavanaugh et al. v. Nelson et al., 170 S. W., 814, the Court of Civil Appeals at Amarillo held that where a *quo warranto* proceeding was prosecuted by the Attorney General, District or County Attorney, either of his own volition or at the instance of a private relator, an appeal from adverse judgment by such private relator not joined by such officer for the State was unsustainable and would be dismissed.

We quote briefly from the Supreme Court of Colorado in the case of State Railroad Commission et al. v. People of The State of Colorado ex rel. Denver & R. G. R. Co., et al., 44 Colo., 245; 22 L. R. A., 810; 98 Pac. 10:

''The sole and the only reason which relators give for seeking to oust respondents is to protect their purely private interests as contradistinguished from the rights of the people. Primarily, this remedy belongs to the State, in its sovereign capacity, to protect the interests of the people as a whole and guard the public welfare by ousting incumbents of office who wrongfully hold to the injury of the public. The district attorney or the attorney general, as the case may be, is the proper one to determine, in the first instance, when the interests of the public justify a resort to this remedy.''

We can see no good reason to depart from the usual and ordinary rules of construction as applicable to Section 9 of Chapter 88, especially when to so do we would do violence to the co-ordination of its parts and would refuse to give to one of its most significant provisions its familiar application and on the other hand endanger its validity under the Constitution.

It is hardly necessary for us to discuss the wisdom of requiring suits of this character to conform to the *quo warranto* procedure. Upon reflection it becomes apparent.

In proceedings by *quo warranto* the information upon which the suit is based must be presented, by a county attorney, a district attorney, or the Attorney General, though it may be based on facts related and verified by any citizen, and if upon his examination and investigation thereof as a sworn officer of the Sovereignty he thinks same sufficient and his judgment approves, he petitions the District Judge for permission to file the information upon the relation of said citizen. If the District Judge thinks the information with its verification sets out sufficient cause, and his judgment is satisfied, he enters his order authorizing the suit to be filed. Thus the Sovereignty safeguards the rights of parties by requiring that two of its authorized agents and officers—its Attorney General or county attorney or district attorney, and District Judge—approve the legality and sufficiency of the petition before the suit may be instituted.

Our answer to Question No. 1 is that appellees were not possessed of legal capacity or right to institute and maintain this suit, and, therefore, the District Court and the Judge of the District Court of Navarro County were without jurisdiction to act upon or hear same.

To Question No. 2 we answer that, as construed herein, Section 9 of Chapter 88 of the Acts of the 36th Legislature is not in violation of Section 21, Article 5 and Section 22, Article 4, of the Constitution, and is valid.

By appropriate motion, appellants pray that further proceedings in this cause be stayed in the trial court pending the determination by the Court of Civil Appeals of the questions presented on the appeal. Under our statute, questions of law certified are to be finally determined by the Court of Civil Appeals in accordance with this court's decision. Since the questions certified cannot be determined, in accordance with this court's decision, without an adjudication that the steps requisite to confer any jurisdiction of the parties or subject-matter on the District Court or on the Judge of the District Court were lacking, it is manifest that jurisdiction could not be exercised by the District Court, pending the appeal, without conflict with the undoubted jurisdiction of this court and of the Court of Civil Appeals. Conley v. Anderson, 164 S. W., 985; Hovey v. Shepherd, 105 Texas, 242, 147 S. W., 224. It is therefore ordered by this court, as essential to the enforcement of its

own jurisdiction, as well as that of the Court of Civil Appeals, that no further proceedings be had in the quo warranto cause by the District Judge or by the District Court of Navarro County pending the final judgment of the Court of Civil Appeals, wherein all directions may be given essential to the complete enforcement of the jurisdiction of the Court of Civil Appeals.

The statute directing that all proceedings instituted under Section 9 of the 1919 Act be summarily disposed of by the appellate courts, it is ordered that this opinion be immediately certified to the Honorable Court of Civil Appeals at Dallas, and that a certified copy be at once transmitted, by mail, to the Honorable Judge of the District Court of Navarro County.