**ELLIS et al. v. LAMB-McASHAN CO.**
**(No. 11435.)**

(Court of Civil Appeals of Texas. Fort Worth. June 13, 1925. Rehearing Denied Oct. 24, 1925. Writ of Error Dismissed for Want of Jurisdiction Dec. 10, 1925.)

**1. Execution ⬯172(2)—Suit to enjoin enforcement of judgment held not barred by limitations.**

Although judgment appeared on face to be valid, where, if allegations of amended petition were true it would not be valid, suit to enjoin execution was not within Rev. St. art. 4648, prohibiting injunctions against any valid and subsisting judgment after expiration of one year from rendition thereof.

**2. Execution ⬯171(1) — Party knowing of facts set out by amended petition at time of filing original petition for injunction held not entitled to injunction.**

Where plaintiffs at time of filing original petition to enjoin execution of judgment in garnishment proceedings knew all additional facts set out by amended petition for bill, they were not entitled to injunction on such amended bill after dissolution of injunction granted on the original petition.

On Motion for Rehearing.

**3. Corporations ⬯509(6)—Judgment may not be set aside because writ and return designated garnishee's local agent as president.**

Judgment in garnishment proceedings may not be vacated on ground that writ and re-

turn designated local agent of garnished corporation, on whom service was properly had, as president of such corporation.

**4. Execution ⬯171(1)—That service of writ not defective held not ground for enjoining execution.**

That service of writ of garnishment was defective, because it commanded garnishee's appearance at day other than first day of ensuing term, will not warrant injunction against execution, where local agent on whom writ was served knew requirement of law and day fixed by law for first term of court.

**5. Judgment ⬯460(1)—Disclosure of garnishee in amended petition to set aside judgment held too late to overcome adverse claims.**

In suit to vacate judgment in garnishment proceedings, garnishee should, in original petition, have made full and frank statement of actual condition of corporate stock sought to be garnished, and disclosure made in amended petition came too late, when delay caused increased hazard, if not impossibility, of meeting and overcoming claims adverse to judgment creditors.

**6. Execution ⬯171(1)—Proceeding to trial in district court pending appeal from judgment enjoining enforcement of judgment enjoined.**

Where, after handing down of original opinion reversing judgment enjoining execution of judgment in suit to set it aside, in which petition was held insufficient, appellee sought to proceed to trial which would invade jurisdiction of appellate court and Supreme Court, if writ of error should be taken to it, temporary writ of injunction against such proceeding should be perpetuated; such not being violation of right of plaintiff to amend pleadings and proceed to trial on merits after dissolution of injunction.

**7. Appeal and error ⬯1120—On dissolution of injunction against enforcing judgment, plaintiff is not entitled to trial on merits, statutory bond is not required.**

Where, on appeal from judgment granting injunction against enforcement of judgment, court decides that plaintiff has not shown himself entitled to trial on merits, Vernon's Sayles' Ann. Civ. St. 1914, art. 4665, requiring bond on dissolution of injunction by interlocutory order, if petition be continued over for trial, does not apply.

**8. Appeal and error ⬯1120—Judgment creditor restrained from suing out venditioni exponas or other process for sale of properties in pursuance of garnishment.**

Upon reversal of judgment enjoining execution of judgment in garnishment proceedings, as Supreme Court may not agree with appellate court, judgment creditor should be enjoined from suing out venditioni exponas or other process for sale of garnished property.

Appeal from District Court, Wichita County; Guy Rogers, Judge.

Suit by the Lamb-McAshan Company against G. R. Ellis and others, for an injunc-

tion. From an order granting a temporary injunction, defendants appeal. Reversed, temporary writ dissolved, and decision certified below.

See, also, 264 S. W. 241; 270 S. W. 547.

Wm. N. Bonner, W. H. Sanford, and Bonner, Bonner & Fryer, all of Wichita Falls, for appellant.

Bryan, Dyess, Colgin & Suhr, of Houston, and Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellees.

CONNER, C. J. This is an appeal from an order of the Seventy-Eighth district court of Wichita county, dated May 1, 1925, granting the prayer of the appellee, Lamb-Mc-Ashan Company, for the issuance of a temporary writ of injunction to restrain the sale of certain property situated in the city of Houston, Tex., known as the Beaconfield Apartments. The injunction was granted without a hearing and without notice to appellant G. R. Ellis, upon an amended petition filed by appellee on May 1, 1925. A like writ of injunction was issued in the same case upon the original petition of the Lamb-McAshan Company filed on December 18, 1923, from which an appeal by appellant G. R. Ellis was duly prosecuted, and which was duly considered and determined by us in April, 1924, as will appear from our opinion reported in 264 S. W. 241. In both petitions it appears that, prior to the 3d day of October, 1922, the appellant Ellis had secured a judgment against J. L. Wilkin and R. H. Wilkin and others for the sum of $33,751, and upon that date had caused a writ of garnishment to be issued out of the district court of Wichita county for the Seventy-Eighth judicial district, upon allegations that appellee, the Lamb-McAshan Company, a private corporation, was indebted to said J. L. Wilkin and R. H. Wilkin and others, and had effects belonging to them and each of them, and that each of said judgment defendants were owners of shares in said company and had an interest therein. It further appears in both petitions that the, writ of garnishment was served on October 9, 1922, and returned to the district court of Wichita county, after which a judgment by default entered in favor of G. R. Ellis against the garnishee, the Lamb-McAshan Company. The object of appellee, Lamb-McAshan Company, in both the original and amended petitions mentioned is to set aside the judgment against it by default, on the ground of fraud and for want of proper service, the particulars of which may be ascertained by reference to our said opinion reported in 264 S. W. 241.

On the former appeal, we reversed the order of the district court and vacated the temporary writ of injunction, on the ground that the Lamb-McAshan Company in its answer to the writ failed to sufficiently show a meritorious defense to the judgment by default, and this opinion was affirmed on a writ of error by Section A of the Commission of Appeals and approved by the Supreme Court. See Lamb-McAshan v. Ellis, 270 S. W. 547.

The writ of garnishment, which the judgment by default recites had been duly served upon the Lamb-McAshan Company, commanded that company to appear before the court at its next term to be held at Wichita Falls on the 12th day of March, 1923, then and there to answer upon oath what, if anything, "it was indebted to said judgment defendants or had effects belonging to them in its possession, or what number of shares, if any, any one of defendants had in said Lamb-McAshan Company," etc.

In its petition to set aside said judgment by default, after recitation of the facts constituting the alleged fraud in the procurement of the judgment and of the insufficiency of service of the writ of garnishment, it was alleged that, on the date of service of the writ, to wit, October 9, 1922, the Lamb-McAshan Company was not "indebted" in any manner to J. L. Wilkin or R. H. Wilkin, and the other defendants against whom judgment had been rendered, but failed to deny that the said Wilkins were holders or owners of shares of stock in the Lamb-McAshan Company, alleged to be a corporation. It was because of this failure to so allege and to fully answer the command of the writ of garnishment that we held that the original petition failed to authorize the temporary writ of injunction.

The amended petition now under consideration on the present appeal contains the following matter that was not presented in the original petition upon which the former writ of injunction issued, to wit:

"That on the said October 9, 1922, and March 12, 1923, and May 5, 1923, nor at any time intervening therein, this plaintiff, Lamb-McAshan Company, was not in any manner indebted to said defendants in judgment, J. L. Wilkin and R. H. Wilkin, either or both of them, and that this plaintiff, Lamb-McAshan Company, did not have any effects in its hands of said J. L. Wilkin and R. H. Wilkin, either or both of them, upon any one of said dates, nor at any time from October 9, 1922, to May 5, 1923. That upon all of said dates, October 9, 1922, and March 12, 1923, and May 5, 1923, this plaintiff, Lamb-McAshan Company, did not know of any one who was indebted to said J. L. Wilkin and R. H. Wilkin, either or both of them, or who had effects of said J. L. Wilkin or R. H. Wilkin in their possession. That on the 9th day of October, 1922, the stock book of this plaintiff, Lamb-McAshan Company, showed on its face that the defendant J. L. Wilkin appeared to own 324 shares of stock, evidenced by certificates Nos. 23 for 216⅔ shares, and 26 for 107⅓ shares, and that the defendant R. H. Wilkin appeared on said stock book to own 108 shares, evidenced by certificate No. 27, and that the said J. L. Wilkin and R. H. Wilkin had no other or further interest in the plaintiff, Lamb-McAshan Company, than as evidenced by said shares of stock and the certificates therefor.

"This plaintiff would show that, in point of

fact, the said J. L. Wilkin and R. H. Wilkin had no real or substantial interest in said shares of stock, and that they were on October 9, 1922, and from and after June 28, 1922, only the nominal owners of said stock, and that they ceased entirely to be even such nominal owners on or about the 5th day of January, 1923, because of the following facts, viz.: That the Wilkin-Hale State Bank, of which said J. L. Wilkin was president, and in which he was a stockholder to the extent of stock of the par value of $69,500, and in which the said R. H. Wilkin was the owner of the capital stock of the aggregate par value of $19,000, had failed and closed its doors some time in March, 1922, and that the banking commissioner of the state of Oklahoma had found it necessary to and had assessed against said J. L. Wilkin, as owner of such stock, and required that he pay the sum of $69,500, and made an assessment against the said R. H. Wilkin of $19,000, both of said assessments having been made by said banking commissioner under and by virtue of the banking laws of the state of Oklahoma, for the purpose of paying off and discharging the indebtedness due by said Wilkin-Hale State Bank to its creditors; and on the 28th day of June, 1922, the said J. L. Wilkin executed in favor of Roy Wolcott, bank commissioner of the state of Oklahoma, his promissory note of said date for the sum of $69,500, payable on October, 2, 1922, with 6 per cent. interest per annum thereon from date, and providing for 10 per cent. attorney's fees if collected by an attorney, with or without suit, if not paid at maturity, and said Wilkin deposited, as security for the payment of said note, said 324 shares of stock in the Lamb-McAshan Company, at Houston, Tex., being the said certificates numbered 23 and 26, and giving the payee in said note the power to sell said stock at public or private sale upon failure to pay the note at maturity, a copy of which note is hereto attached and marked Exhibit 1, and made a part hereof.

"That on the said June 28, 1922, the said R. H. Wilkin executed his note in favor of said Roy Wolcott, bank commissioner of the state of Oklahoma, for the sum of $19,000, payable October 2, 1922, with interest per annum, and with the same conditions and provisions as in the note executed by said J. L. Wilkin, and putting up as collateral said 108 shares of stock in the Lamb-McAshan Company, being certificate No. 27, a copy of which note is hereto attached, and marked Exhibit J and made a part hereof. That afterwards, said two notes having matured on October 2, 1922, and not having been paid, there was filed on October 3, 1922, in the district court at Oklahoma City, Okl., suit No. 36211, State ex rel. Wolcott v. R. H. Wilkin et al., and No. 36212, State ex rel. Wolcott v. J. L. Wilkin et al., which suits were to recover judgment upon said two notes executed by the said J. L. Wilkin and R. H. Wilkin, and foreclose the lien upon said shares of stock in said Lamb-McAshan Company, and that said suits were afterwards, on to wit, January 23, 1923, dismissed because of having been settled in the manner hereinafter stated, as shown by certified copies of the order of dismissal marked Exhibit K and L, attached hereto and made a part hereof.

"This plaintiff would show: That, while in fact the failure of said Wilkin-Hale State Bank was not the fault of said J. L. Wilkin and R. H. Wilkin, but arose from the conditions of crops and business in the state of Oklahoma, and other conditions beyond their control, serious threats were made by the bank commissioner of the state of Oklahoma that, unless these notes and this indebtedness was paid, there would be started criminal prosecutions against the said J. L. Wilkin and R. H. Wilkin, and that the said J. L. Wilkin had three daughters, Mabel Wilkin, Marian Wilkin, and Lillian Wilkin, all of whom had their undivided property situated principally in the state of Texas, and a part of the estate of their grandfather, D. C. Giddings, who had died about 1903, leaving D. C. Giddings, his son, of Brenham, Tex., as independent executor and trustee controlling the estate which would have gone to their mother, the deceased wife of said J. L. Wilkin, and who was formerly Miss Lillian Giddings. That these daughters, influenced by the terror of threats of criminal prosecution of their father, J. L. Wilkin, and of their uncle, R. H. Wilkin, their said uncle, D. C. Giddings, the executor and trustee, as aforesaid, also desiring, if possible, by any legal and proper means to help to avoid the humiliation and disgrace of what they believed to be an unjust and wrongful criminal prosecution, entered into negotiations with and carried out the same to purchase said notes and take over said stock in the Lamb-McAshan Company from the bank commissioner of the state of Oklahoma. That, in pursuance of these negotiations, the said bank commissioner, in the manner required by the laws of the state of Oklahoma for making a settlement of claims against the stockholders of defunct banks, filed a suit in the district court in and for Oklahoma county, state of Oklahoma, styled In re Wilkin-Hale State Bank, of Oklahoma City, Oklahoma, No. 34103, and obtained an order authorizing the settlement of claims against the said J. L. Wilkin and R. H. Wilkin, said order being dated the 29th day of December, 1922, whereby the bank commissioner was to receive in settlement for its claims against the said J. L. Wilkin and R. H. Wilkin, and also against D. C. Giddings, as trustee, who was the owner of $45,000 of the par value of said Wilkin-Hale State Bank, the sum of $93,000 in settlement, all of which is fully shown by copy of said order of said court, hereto attached, marked Exhibit M, and made a part hereof. That as a matter of fact said settlement so made and afterwards carried out, said notes of J. L. Wilkin and R. H. Wilkin were indorsed in blank without recourse by said Roy Wolcott, bank commissioner, acting by and through Prentiss Price, liquidating agent of said Wilkin-Hale State Bank, and they, together with the said 432 shares of the capital stock of the Lamb-McAshan Company, were delivered to the said Mabel Wilkin, Marian Wilkin, and Lillian Wilkin, who paid to said Price, liquidating agent in fact, the sum of $95,000 on the final settlement, being the full sum of $93,000, authorized to be received by the bank commissioner of the state of Oklahoma, and $2,000 additional which was exacted in order to cover the attorney's fee paid to attorneys in Texas for assisting the liquidating agent in finally closing the settlement, which was done by a judgment of the district court of Harris county, Tex., in cause No. 103277, State of Oklahoma ex rel. Wolcott, D. C. Giddings, et al. on the 5th day of January, 1923, a true copy of which judgment

is hereto attached, marked Exhibit N, and made a part hereof.

"Your petitioner, the Lamb-McAshan Company, would show: That on the 9th day of October, A. D. 1922, and at all times thereafter down to and including the 12th day of March, 1923, and the 5th day of May, 1923, the fair cash market value of said shares of stock of the Lamb-McAshan Company was not more than $200 per share, so that said 432 shares of stock of the said J. L. Wilkin and R. H. Wilkin were at all of said dates of not more than the reasonable cash value of $86,800. That, immediately upon said settlement having been made by the said Misses Wilkin with said liquidating agent and taking over said shares of stock on, to wit, January 5, 1923, there was issued to them certificates of stock as follows, viz.: Certificate No. 30 to Mabel Wilkin for 100 shares; certificate No. 31 to Mabel Wilkin for 117 shares; certificate No. 32 to Marian Wilkin for 217 shares; certificate No. 33 to Lillian Wilkin for 216 shares. That the stock book of said Lamb-McAshan Company shows that on July 3, 1922, one M. K. Wilkin was the owner of 218 shares of stock; the same having been transferred to her on said date by said R. H. Wilkin, who was at that time her husband, and said certificate No. 32, issued to Marian Wilkin, included 110 shares transferred and purchased by her from Mrs. M. K. Wilkin, and said certificate No. 33, to Lillian Wilkin, including 108 shares, purchased by her from said Mrs. M. K. Wilkin.

"And plaintiff would further show that the said D. C. Giddings, uncle of the said Misses Wilkin, who is engaged in the banking business at Brenham, Tex., loaned his said nieces, the Misses Wilkin, the sum of $76,500, which, with money the said Misses Wilkin had on hand, $18,500, with which they purchased said 432 shares of stock in the Lamb-McAshan Company, and made said settlement with the bank commissioner of the state of Oklahoma. And this plaintiff would show that the said D. C. Giddings in order to assist his said nieces and cestui que trustees from losing any money if possible by reason of the purchase of said stock of the Lamb-McAshan Company, did himself purchase from Dr. O. L. Norsworthy, of Houston, Tex., and his wife, Mrs. Sanford Gibbs Norsworthy, the other 100 shares of stock for the sum of $200 per share, or a total of $20,000; this purchase having been negotiated some time in November, 1922, and certificate No. 29 issued therefor to the said D. C. Giddings on December 14, 1922.

"Your plaintiff would show that the defendant Ellis, by reason of the issuance of said writ of garnishment on, to wit, the 3d day of October, 1922, and the attempted service of the same on October 9, 1922, as above fully set out, acquired no lien upon said shares of stock or upon any interest that the said J. L. Wilkin and R. H. Wilkin, either or both of them, might have had, even if they had had any equity in said stock, because as was finally determined in this case by the Commission of Appeals, approved by the Supreme Court of Texas, the said service was defective because it cited plaintiff in error to appear at a date of the term of the court other than the first day of the ensuing term, which provision of the statute the court held would appear to be peremptory; and for the further reason that,

as above fully set out, the bank commissioner of the state of Oklahoma had on the 28th day of June, 1922, acquired a valid, subsisting lien upon said shares of stock long prior to the issuance of said writ of garnishment and had foreclosed the same as provided by the terms of the contract of collateral security, and had sold and delivered the shares of stock to the stock of the said Mabel Wilkin, Marian Wilkin, and Lillian Wilkin, who became the owners and holders of said shares of stock, having paid full value for the same."

[1] With the exception of the above quotation, we think it may be fairly said that appellee's amended petition and its original petition, which we held to be defective or insufficient, are substantially the same in tenor and legal effect. Appellant insists that the portion now under consideration is insufficient to sustain appellee's action for the present temporary injunction, for the reason that it is barred by limitation under article 4648, Rev. Statutes, which provides, so far as necessary to quote, that:

"No injunction to stay an execution upon any valid and subsisting judgment shall be granted after the expiration of one year from the rendition of such judgment, unless it be made to appear that an application for such injunction has been delayed in consequence of the fraud or false promises of the plaintiff in the judgment, practiced or made at the time of, or after rendition of, such judgment, or unless for some equitable matter or defense arising after the rendition of such judgment."

While the judgment against the appellee, garnishee, which in this action he seeks to set aside appears on its face to be valid, yet accepting the allegations of the petition before us as true, it cannot be so said, and the statute applies only to valid and subsisting judgments. See Kimmell v. Edwards (Tex. Civ. App.) 194 S. W. 168. Hence we are not inclined to reverse the judgment below on this ground.

Appellant further urges that the new matter presented in the amended petition, which we have above quoted, fails to disclose a meritorious defense, which it was necessary to do in order to authorize the injunction granted. It would seem that appellant at least had the right, upon the service of his writ of garnishment, to have appropriated to the satisfaction of his judgment whatever of equity J. L. Wilkin and R. H. Wilkin had in stock owned by them in the Lamb-McAshan Company, and pledged to the banking commissioner in Oklahoma, under article 3744 of our Rev. Statutes, which provides that:

"Goods and chattels pledged, assigned or mortgaged as security for any debt or contract, may be levied upon and sold on execution against the person making the pledge, assignment or mortgage subject thereto."

While it may be true, we think under the authorities, that, if in truth and in fact the Wilkins had no equity whatever in the stock

actually transferred or disposed of by them prior to the service of appellant's writ of garnishment, such fact would constitute a meritorious defense, but we are not inclined to the view that they could refuse to disclose the facts and thus deprive appellant of the right of contesting them, and of contesting the claim of the banking commissioner and the claims of those asserting a right to the stock under composition agreements with the banking commissioner. The Lamb-McAshan Company was a Texas corporation; appellant was a Texas creditor, and some of us, at least, incline to the view that a citizen of Texas, as was appellant, would have the right to controvert the matters of fact presented in the plea to the merits and have the issues and priorities determined by the Texas courts. However, we need not discuss nor determine the questions so suggested, for the reason that we think there is another ground upon which we must hold that the trial court erred in granting the prayer of appellee's petition for the present injunction.

[2] We think it perfectly clear that every material fact presented in the present petition and relied upon in support of the action of the court in granting the temporary writ of injunction was known to and available by the appellee corporation at the time it filed its original injunction; so that the question is presented whether, under such a state of facts, a litigant is entitled to a second writ by amending his original petition and therein presenting facts held to be necessary in order to sustain the prior application.

In 32 Corpus Juris, p. 74, § 59, it is said:

"Where an injunction has been refused, or has been granted and dissolved by the court, complainant may be entitled to a second injunction, if he amends his bill or files a supplemental or new bill setting up new grounds which did not exist when the first bill was filed; but a second injunction should be refused, or dissolved if granted, where the new, supplemental, or amended bill contains the same grounds alleged in the first bill. Successive injunctions upon different grounds which might be put at issue in one proceeding should not be allowed, where no sufficient reason why the grounds were not urged on the first application for an injunction is shown; and neither ignorance of the law nor of the facts will present any excuse for failure to present such grounds."

In the case of Birchfield v. Bourland, 187 S. W. 422, this court had occasion to consider the question of whether a district or county court may upon an amended petition direct the issuance of the second writ of injunction after a previous order by said court had been dissolved. It was there said that this may be done under certain exceptional circumstances not necessary to notice, but that the record in that case, as here, clearly showed that the amended petition, the prayer of which for the second writ was granted, contained what was originally alleged; with added allegations of facts known at the time

of the prior application, and which the appellee attempted to establish upon a motion to dissolve. We held that the litigant was not entitled to a second injunction on grounds that were set up in his first bill, or should have been set up, citing 22 Cyc. p. 80, par. 8, and other authorities. What we there said is applicable alike to that case and to this, to wit:

"If upon an amended petition of the character here under consideration a second writ of injunction may be granted after the dissolution of a prior one by this court, of what avail to a litigant is our order or jurisdiction? We dissolved the original injunction for want of sufficient allegations in the petition upon which it was granted. The necessary allegations were available and could have been made in the first instance as well as at the time of the amendment. Let us suppose that the appellants should prosecute an appeal from this second order, and we should again hold the petition insufficient and dissolve the second writ of injunction. Should it be said that appellee could further amend and include some necessary allegation pointed out by this court in its determination and again secure a third writ of injunction? Should such a course be maintainable, it is evident that, by amendments and additional writs of injunction, orders on the part of this court might be rendered entirely nugatory, and appellee would or could get all the relief originally sought, and appellants perhaps suffer irreparable injury. The appeal from the original order vested in this court full jurisdiction over the question therein involved, to the exclusion of the lower court."

In the case from which we make the above quotation, we not only held that the second writ of injunction was unauthorized, but also held that the appellant in that case was entitled to a writ of prohibition directed to the lower court and opposing litigant denying the right to issue further temporary writs, on the theory that our judgment dissolving the writ first issued was conclusive as to all matters alleged and that might have been alleged in the first petition. Such a rule would seem to be in harmony with the general principles relating to the finality of judgments.

Upon the ground last discussed, we conclude that the court erred in granting the temporary writ of injunction under consideration, and that his orders should be reversed, the temporary writ be dissolved, and this decision be certified below for such further proceedings as may be authorized by law and as are not in conflict with this opinion.

### On Motion for Rehearing.

In behalf of appellee, an elaborate motion and argument for a rehearing has been filed, to which appellant, by his counsel, has replied by argument equally as elaborate, each citing numerous authorities in support of their several propositions and counter propositions. We cannot hope to satisfactorily dispose of all the contentions and counter

contentions thus presented within reasonable limits, and shall not attempt to do so. We have, however, as far as time and our capacity enabled us to do, examined the whole, together with the entire record, and have concluded that appellant has presented the view most in harmony with the law, and that hence the motion for a rehearing should be overruled.

It will nevertheless, perhaps, be not amiss to add that we feel, not only that the conclusions announced in our opinion on original hearing are correct, but also that appellee's petition is fatally defective on yet other grounds, duly discussed in the reply to the motion for rehearing. We will briefly discuss one of them.

[3] The judgment appellee seeks to set aside recites that the writ of garnishment was in fact served upon George E. Wilkin, and that he was appellee's local agent. This is not controverted, and hence the judgment may not be vacated on the ground that the writ and return designated George Wilkin as the president of the appellee company. Upon this subject, the language of the Supreme Court is as follows:

"The trial court found that George E. Wilkin was the local agent in Harris county of plaintiff in error, and was a proper person upon whom service could be had. This is not denied, and we think it does not invalidate the service because the writ and officer's return designated him as president." 270 S. W. 547.

[4] The service of the writ was considered defective only on the ground that the writ commanded appellee's appearance before the court at a day of the term other than the "first day of the ensuing term." It must be noted that these objections to the service are purely legal and do not appeal strongly to the conscience of a court of equity, if in fact appellee, at the time, not only knew the name of its local agent as found by the court, but also knew the requirement of the law for the command of the writ and the day fixed by law for the first term of the court to which the writ was returnable, and all this abundantly appears from the allegations of the appellee's petition. In its behalf, an affidavit was presented, asserting the fact that George E. Wilkin was not the president of appellee company. This affidavit, it appears, was presented by counsel designating himself as an amicus curiæ, but who in fact appeared before the same court at the same term in behalf of the appellee in other cases.

[5] The action is one in equity, purely, to set aside the judgment, and, under the circumstances alleged, it would seem that, in appellee's first effort to have the judgment vacated, it should have made a full and frank statement of the actual condition of the assets owned or apparently owned by R. H. and J. L. Wilkin, which the plaintiff in garnishment had sought to impound by the writ of garnishment and thus met the rule of equity which declares that he who seeks equity must come in with clean hands. Concededly, full disclosure on appellee's part was not made until the filing of the amended petition now under consideration. We think, as intimated in our opinion in this case, handed down on June 13, 1925, that such disclosures came too late—at a delayed term evidently, which must have increased the hazard, if not the impossibility, for appellant to successfully meet and overcome the adverse claims of the banking commissioner of Oklahoma and the alleged rights of those who, it is now asserted, own the stock in the Lamb-McAshan Company that appellant impounded by his writ of garnishment. In the last appearance of this case in the Supreme Court on writ of error (see 270 S. W. 547) the Commission of Appeals, in an able opinion by German, presiding judge, approved by the Supreme Court, approved the rule many times applied by our courts of final jurisdiction to the effect that to cancel a judgment which recites facts showing jurisdiction, the complainant, though showing that no service was actually had upon him, must also allege that he had a meritorious defense to the action before being permitted to maintain his suit. In the same opinion, the court quotes with approval what was said by the Supreme Court in the case of Freeman v. Miller, 53 Tex. 372, in specifying the things necessary for the party to show to entitle him to relief, to wit:

"First, that his failure to make full answer was not attributable to his own omission, neglect or default; second, that he has a good defense to the entire cause of action, or to such part of it as he proposes by his petition to litigate. It is not enough to show that he was not guilty of neglect in permitting the judgment to go by default, but he must also clearly show that it is inequitable and unjust to permit it to be enforced."

We conclude, as before stated, that the motion for rehearing should be overruled.

[6] In this connection, it will be proper we think to further state that, since the handing down of our original opinion in this case on June 13, 1925, to wit, on September 28, 1925, appellant presented to us, in chambers, a petition setting forth the proceedings in this case, and alleging that, notwithstanding our action and said decision, the appellee company, its agents and attorneys, were seeking to further proceed to a trial in the district court from which this appeal proceeded, and that in fact Hon. Guy Rogers, judge of said court, had, on application of the plaintiff, Lamb-McAshan Company, set the case down for trial on its merits on Monday, October 26, 1925. Appellant presented the contention that such proceeding or any further proceeding would invade the jurisdiction of this court and the Supreme Court upon writ of error, should appellee seek to obtain the

same. Appellant accordingly prayed for the issuance of an injunction out of this court, prohibiting the appellee Lamb-McAshan Company and Hon. Guy Rogers, judge of said Seventy-Eighth District Court, and each of them, from applying for, attempting to procure, procuring, or issuing, any additional writs of injunction at any time, or in any court, anywhere, interfering with the rights of the appellant G. R. Ellis to proceed with the collection of his said judgment. The prayer of the petition was granted, and a temporary writ of injunction was, by this court, issued to the parties named, commanding them as prayed for in the application. Parties named were duly cited, and, upon the hearing of the motion for new trial, in accordance with the notice to so do, all parties appeared and argument was heard. We conclude that said temporary writ of injunction issued by this court should be continued and perpetuated unless otherwise ordered by this or the Supreme Court, and it is ordered that immediate notice of this conclusion be given to the appellee company and Hon. Guy Rogers. We do not regard this conclusion as in violation of the general right of a plaintiff to amend his pleadings and proceed to a trial upon the merits after a dissolution of an injunction procured by him. The right to so do necessarily involves the conclusion that the petition upon which a trial is demanded presents a cause of action entitling him to the relief prayed for. In this case, it has been decided on appeal now pending, that the amended petition of the appellee upon which he proposes to proceed to trial, presents no right in him to set aside the judgment in garnishment, and we think that, while the question of the sufficiency of the petition to disclose a right as asserted is pending for determination in an appellate tribunal, the jurisdiction and power of the trial court to further proceed must be held in abeyance. There is no contention in behalf of appellee that it can by amendment set up new and additional matter not known nor discoverable by the use of reasonable diligence at the time of the filing of the petition under consideration, and we hence think that appellee, and indeed appellant, must await a final determination of the questions involved on this and other appeals. To rule otherwise is to invite the possibilty, if not the proba-

bility, of embarrassing conflicts between the trial court and the appellate tribunals, and we think the conclusion reached is supported by a consideration of the cases of Larson v. Moore, 1 Tex. 22, 23, and the later case of Staples v. State ex rel., 112 Tex. 61, 245 S. W. 639.

[7] Appellee prays that, in event we conclude to adhere to our former order dissolving the injunction in this case, appellant be required to give bond as required by article 4665, V. S. Tex. Civ. Statutes. This article provides that, upon the dissolution of any injunction restraining the collection of money, by an interlocutory order of the court or judge, "if the petition be continued over for trial, it shall be the duty of the court or judge to require of the defendant in such injunction proceedings a bond," etc., "conditioned to refund to the complainant the amount of money, interest and costs, which may be collected of him in the suit or proceeding enjoined, in the event such injunction is made perpetual on final hearing." It is to be noted that the article only requires such refunding bond in cases where the petition is "continued over for trial," and we have decided that appellee has not shown himself entitled to a trial upon the merits. The statute, therefore, is without application. Moreover, we think the conclusion reached by us, to the effect that appellee, until otherwise ordered, is not entitled to a trial upon the merits, and that it therefore may not lawfully take any other or further proceedings in this case antagonistic to appellant until the final determination of the questions presented upon this appeal, apply in spirit to the appellant as well as to the appellee.

[8] In view of the fact, therefore, that our Supreme Court may not agree with our conclusion on writ of error, we conclude that this opinion, in order to maintain the statu quo, shall be construed as broad enough to also prohibit appellant from suing out the venditioni exponas or other process for the sale of appellee's properties, which it is alleged appellant is threatening to do. It is further ordered that the clerk forthwith serve both appellant and appellee and the Honorable Guy Rogers with a copy of this order.

BUCK, J., not sitting.