**TEXAS INDUSTRIAL TRAFFIC LEAGUE, et al., Appellants,**

v.

**RAILROAD COMMISSION OF TEXAS, et al., Appellees.**

No. 13380.

Court of Appeals of Texas, Austin.

Feb. 3, 1982.

Rehearing Denied Feb. 24, 1982.

Deborah A. Chadbourne, Irving, Daniel J. Sweeney, Steven J. Kalish, Belnap, McCarthy, Spencer, Sweeney & Harkaway, Washington, D. C., for appellants.

Mark White, Atty. Gen., R. Lambeth Townsend, Asst. Atty. Gen., John R. Whisenhunt, Robinson, Felts, Starnes & Latting, Austin, for appellees.

## ON MOTION FOR REHEARING

POWERS, Justice.

The opinion of this Court handed down on December 2, 1981, is withdrawn, and the following opinion replaces it.

Appellants are three organizations: Texas Industrial Traffic League, National Small Shipments Traffic Conference, and Drug and Toilet Preparation Conference. Appellees are the Texas Railroad Commission and a corporation named Common Carrier Motor Freight Association, Inc. (CCMFA).

The Commission represents the public interest in the exercise of its power, and the performance of its duty, "to fix, prescribe or approve the maximum or minimum, or maximum and minimum rates, fares and charges" made by motor carriers for their intrastate services. Tex.Rev.Civ.Stat.Ann. art. 911b, § 4(a), (d) (1964). It may be said that appellants are organizations of customers, or the users of motor carrier services, who would have an interest in lower shipping rates, while CCMFA is an organization of motor carriers who furnish such shipping services and would have an interest in higher rates.

In the present case, an application was made to the Commission for an average rate increase of 8.1 percent in motor carrier rates. Appellant organizations appeared in the Commission proceedings and resisted the increase. When the Commission promulgated the increase, appellants "appealed" to the district court seeking judicial review of certain errors they claimed were made in the Commission proceedings. The Commission was made the party defendant in such "appeal" and CCMFA was allowed to intervene.

In the district court proceedings, the Commission raised by oral argument, under its previously-filed general denial, the question of whether appellant organizations had "standing" to maintain the suit for judicial review. The trial court did not specifically rule on the question of standing; indeed, it is not clear that the Commission specifically requested the court to do so by motion or otherwise. Nevertheless, the trial court impliedly overruled any objection to appellants' standing when the court affirmed the Commission decision on the merits. The record does not reflect that any appellee objected to such action by the trial court. CCMFA does, however, raise the issue of standing by cross point in its brief in this Court. We need not determine if appellee's failure to object in the trial court was a waiver of the error under the rule of *West Texas Utilities Co. v. Irvin*, 161 Tex. 5, 336 S.W.2d 609 (1960). This is so because we view the standing objection in this Court, made by CCMFA's cross point, as raising a question of fundamental error touching upon our power to consider the appeal, as discussed below.

.CCMFA contends that appellants lack standing because none of them actually ship or receive freight moving by motor carrier within the State; that they are mere "traffic conferences" *composed* of shippers and receivers of freight; that the rates established by the Commission cannot, therefore, be unreasonable or unjust *as to them,* which refers to the burden set in Tex.Rev.Civ. Stat.Ann. art. 911b, § 20 (1964) upon those who seek judicial review of the Commission's decisions;[1] that appellants therefore can show no "special injury"; that appellants have failed to identify any specific shipper who will be required to pay an unjust or unreasonable rate on any specific commodity moving between any two points in the State; that appellants, for these reasons, cannot be *persons aggrieved* by the Commission's decision, referring to a statutory qualification set out in Tex.Rev.Civ. Stat.Ann. art. 6252–13a, § 19(a) (Supp.1980) for those who would seek judicial review of any administrative agency decisions;[2] and, the rendition of any judgment in this case, under these circumstances, would amount to our rendering an advisory opinion, which character of decision it is not within our power to give.

In response, appellants contend they are each a *party at interest* within the meaning of section 20 of the Motor Carrier Act and are, therefore, entitled to judicial review thereunder; that no Texas decision has ever denied organizations such as they the "standing" to maintain an administrative appeal of an order promulgating shipping rates; that, indeed, the courts of the State have in fact reviewed such cases, in one of which these very appellants were involved; that appellants' members are substantial companies and customers of the regulated motor carriers who obtained the rate increase; that appellants' members are therefore "hurt" by the increased and allegedly improper rates; and, that no person has suffered a "special injury" as a result of the increased rates and no showing of such should be required as a condition of standing to challenge the rates.

█ We should add that the record discloses or suggests that appellants are unincorporated voluntary associations,[3] alleged in their petition in district court to have over 300 members who ship or receive freight subject to the rates set by the Commission; that none of appellants' ostensible members were designated parties in the Commission proceedings and none were parties in the district court proceedings in judicial review of the Commission's decision; that it is undisputed that none of the three appellants themselves are actual shippers or

---

1. Article 911b is referred to hereafter as the "Motor Carrier Act.", Section 20 of which provides in pertinent part as follows:

   "If any motor carrier or other *party at interest* be dissatisfied with any decision, rate, charge, rule, order, act, or regulation adopted by the Commission, such dissatisfied person, *association,* corporation, or *party* after failing to get relief from the Commission may file a petition setting forth the particular objection to such decision, rate, charge, rule, order, act or regulation, or to either or all of them in the District Court in Travis County, Texas against said Commission as defendant.... In all trials under this section the burden of proof shall rest upon plaintiff, who must show by the preponderance of evidence that the decisions, rates, regulations, rules, orders, classifications, acts, or charges complained of are *unreasonable and unjust to it or them* ... [emphasis added]."

2. Article 6252–13a, the Texas Administrative Procedure and Texas Register Act, is referred to hereafter as "TAPTRA." Section 19(a) of that Statute provides in pertinent part as follows:

   "(a) person who has exhausted all administrative remedies available within the agency and *who is aggrieved* by a final decision in a contested case is entitled to judicial review under this Act ... [emphasis added]."

3. The record does not reveal the precise nature of any of the appellant organizations, whether corporations or, as they appear to be, voluntary unincorporated associations. The general rule is that only a legal entity may maintain a lawsuit. *Stinson v. King,* 83 S.W.2d 398 (Tex.Civ. App.—Dallas 1935, writ dism'd); *Cole v. Dyer Hardware Co.,* 77 S.W.2d 286 (Tex.Civ.App.— Amarillo 1934, no writ); 67A C.J.S. *Parties,* § 9 (1978). The term "legal entity" ordinarily encompasses only natural persons and corporations, and in some cases partnerships. *Id.;* see

receivers of freight; and that the extent of any effect of increased rates on the associations' members was not a subject of proof, either in the Commission proceedings or those in district court.

Having stated the substance of the record before us, we turn to the merits of the attack made upon appellants' standing to maintain an action for judicial review of the Commission's decision which sets higher shipping rates. We assume for the present that the members of the appellant-organizations will, indeed, have to pay any increased rates.

## DO APPELLANTS HAVE STANDING TO MAINTAIN A SUIT FOR JUDICIAL REVIEW UNDER THE MOTOR CARRIER ACT, § 20 AND TAPTRA, § 19(a)?

Appellant's suit is one to control, by judicial review, the official actions of a public agency—the Commission. The law of standing, as developed in Texas in such "public actions," is somewhat complicated. It has evolved from the earliest days and is not yet settled. While the present appeal involves a suit for judicial review, on "appeal" from an agency, the law of standing is applicable alike to such "appeals" and to suits brought originally in district court with the same aim of controlling official action. Moreover, the law of standing included a rule which required a showing of "special injury" as an essential element of standing to bring a public action. This venerable rule is said to have been abandoned by the Supreme Court of Texas. *See*

Spears & Sanford, "Standing to Appeal Administrative Decisions in Texas," 33 Baylor L.Rev. 215 (1981). In view of the foregoing, a general review of the cases, from an analytical standpoint, is unavoidable and will make clear our reasons for remand of the present case for further development with respect to the issue of standing.

■ We start with the general rule of the common law that only a person whose legal right has been breached or adversely affected by another may assert a claim thereon. Stated another way, one may not maintain an action based upon the harm suffered by another. *Nobles v. Marcus*, 533 S.W.2d 923 (Tex.1976).

Having set out the general proposition that one may not maintain an action based upon harm to another, we hasten to point out that this proposition is honeycombed by exceptions. Such exceptions have been the result of changes in the common law, for example the common law fiction of "virtual representation," applied in *Mason v. Mason*, 366 S.W.2d 552 (Tex.1963). They have been the result of rules of procedure, for example the formal class action procedure authorized by Tex.R.Civ.P. 42. They have been the result of statutes, for example Tex.Rev. Civ.Stat.Ann. arts. 4675 (1952), 8306, § 8a and § 13 (1967), which permits representatives to maintain wrongful death and personal injury actions based upon the death or injury of another.

It is apparent in the case before us that if anyone is harmed by increased shipping

also Tex.Rev.Civ.Stat.Ann. arts. 2033 (1964); 6138A, § 6(A)(2) (1970). The rule is founded upon the doctrine of *res adjudicata*. Who is bound by a judgment if one of the parties is not a legal entity? Moreover, if a judgment cannot be made binding, why is it not advisory only? We believe, however, that Tex.Rev.Civ.Stat. Ann. art. 6133 (1970) might allow unincorporated associations such as these appellants, if they are of that nature, to maintain a suit in district court. *See Jones v. Maples*, 184 S.W.2d 844 (Tex.Civ.App.—Eastland 1944, writ ref'd). Because we remand the case, we leave to the trial court's determination that initial question.

Tex.R.Civ.P. 28 allows any "partnership, unincorporated association, private corporation, or individual doing business, under an assumed name" to sue or be sued "in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right, but on a motion by any party or on the court's own motion the true name may be substituted." Before any "true name" may be substituted as the rule allows, there must exist, it would seem, a legal entity capable of bearing such "true name." In other words, the rule refers only to those entities having a legal existence and those organizations otherwise specially permitted by statute to sue and be sued.

rates, it is probably not the appellant-organizations. These organizations have not alleged or shown that they, *as organizations*, will be affected by the higher rates. It is transparent, however, that appellant-organizations do not claim or rely upon any effect upon themselves but wish, instead, to *represent* the interest of their members in lower shipping rates in the judicial review of the Commission decision just as they did in the Commission proceedings. So far as we are able to determine, this aspect of judicial review of an administrative decision presents several questions not authoritatively answered in our State's jurisprudence.

The Legislature's enactment of Section 20 of the Motor Carrier Act and Section 19(a) of TAPTRA constitutes an attempt by that body to confer upon certain participants in Commission proceedings the right to have judicial review of the Commission's decisions and actions. Appellants contend that these statutes give them the right to such judicial review as organizations representing the interests of their members in the shipping rates set by the Commission, even though the organizations will not have to pay such rates themselves. Assuming the statutes to be susceptible of that interpretation, and we believe they are, we must measure them against the constitutional prohibitions against the rendition of advisory opinions and the decision of political questions, the foundation of the "special injury" requirement that has long been a barrier to suits aimed at controlling official actions by resort to the courts.

■ The rule against advisory opinions is not a direct prohibition contained in the Constitution of Texas, but is, rather, a common-law rule based upon inferences necessary to be drawn from that document. That common-law rule originates in the constitution's distribution of governmental power and duty among several public officers and departments, it being the express duty of the attorney general, a member of the executive department, to give such opinions. Tex.Const.Art. IV, § 22. By necessary implication, then, it is not the duty of the judicial department to give such opinions and it is without power to do so. *See Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641 (1933); *United Services Life Insurance Co. v. Delaney*, 396 S.W.2d 855 (Tex.1965).

■ Closely akin to the prohibition against the rendering of advisory opinions by the judicial department is that which forbids the judicial department's deciding political questions. It is not within the department's power and duty to inquire how the executive and legislative departments of government, and their respective officers, perform duties in which they have discretion. *See School Board of the City of Marshall v. State*, 162 Tex. 9, 343 S.W.2d 247 (1961); *Carter v. Tomlinson*, 149 Tex. 7, 227 S.W.2d 795 (1950).

How, then, do these constitutional barriers form part of the law of standing? We find from an examination of the reported decisions that the Supreme Court of Texas has treated several kinds of issues as "standing" issues; and, has frequently used the absence of a "special injury" as a reason for dismissing a suit when perhaps it intended some other rationale as a justification for its dismissal. We will no doubt be excused if we discuss these cases at some length.

*The requirement of a "special injury."* Outside the area of administrative "appeals," in suits brought originally in the district court, many have sought to control the actions of public officers, agencies, departments or subdivisions. There developed the rule that in such cases the plaintiff lacked standing to maintain an action unless he could allege and show a "special injury," that is, an injury different from any suffered by the public at large as a result of official action claimed to be illegal. *Harding v. Commissioners' Court of McLen-*

*nan County*, 95 Tex. 174, 66 S.W. 44 (1902); *Woods v. Kiersky*, 14 S.W.2d 825 (Tex. Comm'n App.—1929, judgmt adopted); *San Antonio Conservation Society v. City of San Antonio*, 250 S.W.2d 259 (Tex.Civ.App.— Austin 1952, writ ref'd). Though used as a touchstone of standing, one searches the reported cases almost in vain for a thread of logic or consistency in the decisions relative to "special injury."[4] In two modern cases, the Supreme Court of Texas has adopted a liberal interpretation of the term "special injury," to an extent that calls into question whether that term is still the touchstone of standing in cases that originate in the district court, as opposed to those brought there on "appeal" from an administrative agency.

In *Texas Highway Commission v. Texas Association of Steel Importers, Inc.*, 372 S.W.2d 525 (Tex.1963), the Supreme Court held that the plaintiffs, some of whom were merely "resident citizen property taxpayers of the State of Texas, or the representatives of such property taxpayers," *interested* in the sale and use of imported manufactured products, had standing ("the right

and litigable interest") to maintain a suit to declare void a minute order of the Texas Highway Commission on the basis that the order corrupted the purity of the State's competitive bidding procedure, set out in several statutes. The order in question had the effect of limiting the materials used in highway construction projects to those manufactured in the United States. The capacity of the plaintiffs to maintain the suit had been challenged in the Court of Civil Appeals on the ground that they had not obtained legislative consent to bring the suit, it being one patently against the State, and on the ground that the plaintiffs' pleading did not allege any facts to show that any plaintiff had a justiciable interest in the subject matter of the suit, and in fact alleged no more than a dispute as to a political affair—whether an order of the kind in question was a wise policy. The Court of Civil Appeals held that the plaintiffs had standing because, the order being found void on the merits, the suit was not one against the State but one against the public officials charged to have acted illegally! This rationale patently confuses the result of the suit with whether

4. The phrase "justiciable interest," coined in *Yett v. Cook*, 115 Tex. 205, 281 S.W. 837 (1926) and often used in reference to standing, is no more explanatory than the term "special injury." Both are mere conclusions affirmatory of some underlying, but usually unarticulated, principle, fact, assumption or decision respecting the circumstances presented by a particular case. These underlying matters are certainly not self-evident. For example, in *American Nazi Party v. Zindler*, 561 S.W.2d 247 (Tex.Civ. App.—Houston [14th Dist.] ), writ ref'd n. r. e. *per curiam*, 568 S.W.2d 662 (Tex.1978), the Supreme Court expressly agreed that the plaintiff lacked "standing" because he had shown no "special injury" or "justiciable interest" in his suit for injunctive relief, founded upon his "indignation and resentment" with respect to an objectionable radio broadcast. The real basis of decision seemed, however, to be that the plaintiff simply failed to state a cause of action under the rule that the law will not entertain suits founded upon alleged injuries so slight and trivial as "indignation and resentment," and perhaps on the basis that a legal wrong was not alleged. *See Booth v. Coward*, 265 S.W. 1026 (Tex.Comm'n App.1924, judgmt adopted); *Munger v. Richards*, 87 S.W.2d 797 (Tex.Civ.App.—Eastland 1935, writ ref'd). It is difficult to see how standing was involved at all in *Zindler*. The rather obvious issues were

whether a legal wrong and a legal injury were alleged by the plaintiff.

Certain kinds of suits to control official action may be brought by a private plaintiff when it is obvious that they have suffered from such action *only* in the same way and to the same extent as the public generally. *Texas Highway Comm'n v. Texas Ass'n of Steel Importers, Inc.*, 372 S.W.2d 525 (Tex.1963), a suit brought by resident citizen taxpayers, among others "interested" in the matter, to declare void an order of the Texas Highway Commission which had the effect of restricting the use of construction materials on highway projects to those of domestic manufacture; and, *Terrell v. Middleton*, 187 S.W. 367 (Tex.Civ.App.—San Antonio 1916), writ ref'd *per curiam* 108 Tex. 14, 191 S.W. 1138 (1917), a suit by a "taxpaying citizen" to prevent the illegal expenditure of public funds. These cases, and others like them, considerably erode any logical underpinning of the "special injury" requirement. The difficulty lies in predicting when the requirement is met and when it is not; *some* degree of private interest in public actions is sufficient for standing in some cases. "If there is controversy, it is controversy concerning the degree of special interest required." Jaffe, *Judicial Control of Administrative Action* 459 (1965).

the plaintiffs were entitled to bring it in the first place; nevertheless, the Supreme Court of Texas adopted and affirmed the rationale, saying:

> Said respondents are resident citizen property taxpayers of the State of Texas or the representatives of such property taxpayers. Some of them are owners of imported foreign manufactured products suitable for highway construction purposes. All of them are actively engaged in or interested in the sale and use of imported manufactured products. As this is not a suit against the State, such parties clearly have the right and litigable interest to have the challenged Minute Order declared null and void. [372 S.W.2d at 530–31].

The Supreme Court of Texas seems committed to the rationale. Cf. *Director of Department of Agriculture and Environment v. Printing Industries Association of Texas*, 600 S.W.2d 264 (Tex.1980) (affirming a trial court's dismissal of plaintiffs' petition because it failed to state a cause of action, the official action complained of being found, in a decision on the merits, to be not illegal). Nevertheless, by incorporating in the standing decision the factors of mere residency, citizenship, payment of taxes and a special *interest* in the subject matter of the suit, the Supreme Court of Texas, in *Texas Association of Steel Importers, Inc.*, adopted a distinctly liberal attitude toward standing generally.

This liberal view was confirmed, and even broadened, by the Court's decision in *Touchy v. Houston Legal Foundation*, 432 S.W.2d 690 (Tex.1968). There, four private lawyers and an association of lawyers (Texas Society of Practicing Lawyers, Inc.) were permitted to maintain an injunction suit to prevent the unauthorized practice of law and acts alleged to be "demeaning" to the legal profession and harmful to the plaintiffs. The acts complained of consisted of the foundation's advertising its free legal services, which were performed by its staff attorneys for indigents only, and its referral service wherein it referred fee-generating cases to lawyers in an independent practice. The foundation directly challenged the plaintiffs' standing to maintain such an action. With respect to the standing issue, the Supreme Court of Texas said:

> We hold that, due to the special interest attorneys have in their profession, they have standing to maintain a suit to enjoin action which allegedly damages their profession.

> \*    \*    \*    \*    \*    \*

> We find that there are cases which hold to the contrary. However, we are clear in the view that the interest of the legal profession, as well as the interest of the public, would be better served by recognizing the right of private attorneys to institute an action, upon proper and sufficient allegations, to enjoin the unauthorized practice of law or conduct of non-lawyers which is demeaning to the legal profession and harmful to the plaintiffs. [432 S.W.2d at 694].

Several things are significant about the *Touchy* holding and the language used in justification of it. First, given the facts of the case, the phrase "harmful to the plaintiffs" must be interpreted to include "harm" that is insubstantial, indirect, speculative and remote. There is nothing in the opinion to indicate any actual harm to any plaintiff; instead, the facts support only what was primarily an abstract harm or an injury to the plaintiffs' sensibilities. Second, the Supreme Court of Texas again, five years after *Texas Association of Steel Importers, Inc.*, said that a mere special *interest* is sufficient for standing in some circumstances. Third, the Court expressly permits the *public* interest to be a factor in the standing decision. Fourth, the Court permits five private plaintiffs to determine where the public interest lies and to represent the public in a suit to vindicate and enforce that interest. Fifth, the Court permits these private plaintiffs to represent as well the interest of the entire legal profession, on a theory that the Court did not articulate. Sixth, the Court permits the plaintiffs to represent the public interest and the legal profession in Texas in the face of a statute and rule of the Supreme Court

of Texas which placed in the State Bar of Texas the power and duty to represent the profession and the public in the circumstances. Tex.Rev.Civ.Stat.Ann. art. 320a–1 (1973); State Bar Rules, Rules and Code of Professional Responsibility, art. XII (1973). Not surprisingly, this statute and rule had been the basis of the Court of Civil Appeals decision, at 417 S.W.2d 625, with respect to the standing of the four attorney-plaintiffs and the Society of Practicing Lawyers, Inc., the Court saying:

> The State Bar Rules promulgated by the Supreme Court pursuant to Art. 320a–1 provide in Art. XII a system of member discipline under prescribed Grievance Committee procedure. That procedure, in our opinion, is *exclusive* to the extent that an independent original action alleging unethical practices by an attorney brought in the district court without first exhausting the statutory remedy is not authorized.... The summary judgment of dismissal was proper, therefore, on these grounds. [417 S.W.2d at 629 (emphasis added) ].

The reasoning of the Court of Civil Appeals, in this case, is in harmony with one of the few threads of consistency running through the reported decisions on standing in suits by private litigants to control official action: where there is a designated representative of the public interest in challenging official conduct alleged to be illegal, no private litigant has the requisite standing,

absent a "special injury." [5] Nevertheless, the Supreme Court of Texas reversed the decision of the Court of Civil Appeals.

*Standing of a private litigant when there is a designated public representative.* The Supreme Court of Texas has determined several issues of standing on the basis that some statute of the State, or the nature of the action presented, required that a public officer maintain the action, with the necessary implication that a private litigant lacked the capacity to do so. *Yett v. Cook, supra; Hoffman v. Davis,* 128 Tex. 503, 100 S.W.2d 94 (1937); *Hulett v. West Lamar Rural High School Dist.,* 149 Tex. 289, 232 S.W.2d 669 (1950). In 1902, the Court expressed a corollary to that rule: where a public official owes a duty to the State, the State may compel him to perform it by mandamus but a private citizen, to whom the duty is not owed, may not compel its performance. *Lewright v. Love,* 95 Tex. 157, 65 S.W. 1089 (1902). In *Staples v. State,* 112 Tex. 61, 245 S.W. 639 (1922), the Court added this variant: even though a statute governing election procedures authorized "any citizen" to institute a suit in *quo warranto* to enforce the statute against a candidate who allegedly violated its provisions, the essential nature of a *quo warranto* proceeding required the presence of the county attorney or attorney general in the suit, and gave him control over the litigation, even though the statute did not specifically so require. In such a suit, the private

---

5.   *Touchy* was not a suit against a public agency or officer as defendant, but it was much the same thing with respect to its being adjudicated in the context of a statute governing the practice of law and the plaintiffs being allowed to represent the public interest normally represented by a public officer or agency. *Texas Association of Steel Importers, Inc.,* was, of course, a classic public action brought outside the context of an administrative "appeal." Both cases suggest that a private "injury" or "interest" is sufficient for standing, i.e., is sufficiently "special," even though the private "injury" or "interest" is slight indeed, provided the case presents an issue of sufficient *public* interest. There naturally arises the question: why should *any* private "injury" or "interest" be required if individual standing is justified primarily on the basis of the *public* interest? A simple answer is, of course, the prohibition

against the judicial department's rendition of advisory opinions and its deciding political questions. Within these prohibitions, however, judicial discretion to grant standing in such cases might depend upon such things as the importance of the public issue and interest involved, whether a judicial remedy is likely to be remedial, whether the issue is clearly presented and deference due the public agency or official. *See* Jaffe, *supra* note 4, at 528. We do not mean to say that the Supreme Court of Texas has expressly adopted this theory of judicial discretion, only that *Touchy* and *Texas Association of Steel Importers, Inc.,* took a most liberal view of standing generally, and of "special injury" in particular, when it was apparent that a fairly important public interest was involved. This is the basic thrust of both opinions as their language makes clear.

citizen is merely the complainant and the suit is brought on his complaint under the control of the State's official attorney. Evidently referring to the constitutional impotence of the legislature to confer upon the judicial department the power to decide political questions or render advisory opinions, a matter discussed below, the Court in *Staples* added the following sentence:

> The (election) statute cannot confer a right upon private individuals to act for all where it is shown they have no interest different from all others. [245 S.W. at 641].

This sentence also incorporates, of course, the common law test for invoking the judicial power in the context of suits to control official action—the "special injury" test. Traditionally, the test had been justified on the basis that a multitude of suits would be brought if the test were not applied. "Governments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review." *Osborne v. Keith*, 142 Tex. 262, 177 S.W.2d 198, 200 (1944); *see also Holland v. Taylor*, 153 Tex. 433, 270 S.W.2d 219 (1954).

It has been said, however, that the threat of a multitude of suits is not the true basis of the rule of "special injury"; rather, the proper basis is that a private plaintiff who would represent the public interest may not do so simply because the legislature has impliedly prohibited his doing so by placing the duty upon some public official. *City of San Antonio v. Strumberg*, 70 Tex. 366, 7 S.W. 754 (1888). It is the legislature who ultimately represents the public and it may place the duty of representing the public where it chooses, so long as it does so constitutionally. And where the legislature places the duty in a public official to represent the public interest, if the discretion of that official is essential to the bringing or the handling of the suit, a private litigant may not compel him to perform it. *Hoffman v. Davis, supra; Agey v. American Liberty Pipeline Co.*, 141 Tex. 379, 172 S.W.2d 972 (1943).

■ *Lack of Constitutional Power in the Judicial Branch to Decide a Controversy Brought by a Private Plaintiff to Control Official Action.* The judicial department of the State of Texas may not decide political questions and may not render advisory opinions, as discussed above. It is apparent that the same prohibitions prevent the legislature from conferring upon a private litigant the standing to challenge in court the actions of a public official and, of course, prevent the legislature from requiring the courts to adjudicate a case, if the nature of the controversy calls essentially for an advisory opinion or the decision of a political question.

In former times, the Supreme Court of Texas was called upon to decide "appeals" involving the removal of county seats from one location to another in the county. *See Caruthers v. Harnett*, 67 Tex. 127, 2 S.W. 523 (1886); *Harrell v. Lynch*, 65 Tex. 146 (1885). The controlling case on the issue, cited in the later decisions, was *Ex parte Towles*, 48 Tex. 413 (1877), which explicitly holds that the legislature may not confer upon a private plaintiff the power to "appeal" to the district court from the commissioners' court decision in such cases.

In the immediate case, we are faced with the same issue in our interpretation of the term "person aggrieved," as used in TAPTRA, § 19a, and the term "party at interest" as used in the Motor Carrier Act, § 20. These terms describe, of course, the persons entitled to "appeal" from the decision of the Texas Railroad Commission to district court, there to complain of the actions of the agency and to have that court control such official action. We consider initially the kind of litigant who may appear in the agency in the first instance.

*Standing Before an Administrative Agency.* In common with most administrative agencies, the Commission operates under the provisions of TAPTRA and specific statutes governing its proceedings. TAPTRA does not specify any criterion for admitting parties to hearings before administrative tribunals but it does define the word "party" as meaning "each person or agency

named or admitted as a party." This seeming *non sequitur* is clarified by the concurrent definition of "person" to mean "any individual, partnership, corporation, *association*, governmental subdivision, or public or private *organization of any character. . . ."* TAPTRA, §§ 3(5) and (6) (emphasis added). It is plain, then, that TAPTRA poses no barrier to an organization's appearance before the Commission and its standing to maintain a position in a contested case before that agency, such as a ratemaking procedure. *Id.,* § 3(2). This is generally true of most other agencies as well. *See* Spears & Sanford, *supra* ; Schwartz, Administrative Law § 94 (1976). Since administrative proceedings are different from judicial proceedings in purpose, nature, procedural rules, evidence rules, relief available and the availability of review, it is understandable that one's right to appear in an agency proceeding should be liberally recognized. Moreover, administrative tribunals are created to ascertain and uphold the public interest through the exercise of their investigative, rulemaking and quasi-judicial powers. Any stricture upon standing in an administrative agency would thus be inconsistent with the proposition that the agency ought to entertain the advocacy of various interests and viewpoints in determining where the public interest lies and how it may be furthered. The doctrine of standing in the judicial branch serves, however, a different function: it avoids suits where there is no genuine controversy susceptible of judicial resolution and enforcement.

*Standing in District Court on "Appeal" from an Agency Decision.* Section 19 of TAPTRA orchestrates the numerous statutory provisions which authorize "appeals" to be taken to district court from the decisions of administrative agencies; it also provides such review to "persons aggrieved by a final decision in a contested case" as a cumulative authorization; and, the section provides the procedure to be followed in such judicial review as well as the relief affordable after final hearing. Section 20 of TAPTRA authorizes further review by appeal from the district court decision.

It should be borne in mind, however, that one who complains of an actual or threatened injury resulting from official action may, in some instances, have judicial review of that action in a proceeding which the district courts of Texas have inherent power to entertain, absent *any* statutory authority for judicial review. *Stone v. Texas Liquor Control Board,* 417 S.W.2d 385 (Tex. 1967); *Policemen's & Firemen's Civil Service Commission v. Blanchard,* 582 S.W.2d 778 (Tex.1979). Such circumstances are not involved here.

With respect to the ordinary administrative "appeal," however, the traditional rule has been that a showing of a "special injury" is required to obtain judicial review, notwithstanding that the plaintiff quite properly appeared before the administrative agency and maintained a position in the agency proceedings under the liberal statutes applicable to administrative standing. As stated in *Scott v. Board of Adjustment,* 405 S.W.2d 55, 56 (Tex.1966):

> Many statutes give the right to review or to institute suit to 'persons aggrieved,' 'persons adversely affected,' 'any party in interest,' or any person 'whose rights are substantially affected.' Where the statute requires that the person be interested, affected, aggrieved, or (in the absence of a statute) where the common law rule requiring the showing of a particular injury or damage is controlling, the plaintiff must allege and show how he has been injured or damaged other than as a member of the general public in order to enjoin the actions of a governmental body.

This decision preceded the enactment of TAPTRA, but it is interesting in several respects. First, it says that even where the statute requires merely that the one seeking judicial review be "interested, affected [or] aggrieved," still he must comply with the "special injury" requirement. Second, if no such statute is applicable to the case, the common law rule requiring such "special injury" is applicable. Third, in either circumstance, the "plaintiff must *allege* and *show* how he has been injured or damaged

other than as a member of the general public in order to enjoin the actions" of which he complains. *Id.* (emphasis added). The emphasized words evidently mean that the plaintiff must plead facts showing "special injury" and support his allegations by evidence. *See City of West Lake Hills v. State ex rel City of Austin*, 466 S.W.2d 722 (Tex.1971).

We are recently instructed that the term "person aggrieved" used in TAPTRA § 19(a) must be orchestrated with any similar provision in a statute specifically describing those participants in an administrative proceeding who may obtain judicial review of the decisions of a particular agency. *Hooks v. Texas Dept. of Water Resources*, 611 S.W.2d 417 (Tex.1981). Here, section 20 of the Motor Carrier Act offers judicial review to any "party at interest" and TAPTRA § 19(a) offers such review to any "person aggrieved" by the Commission's decision, the latter authorization being expressly made *cumulative* of the for-

mer. When we read these terms "in conjunction and harmony with each other," do they show that appellants have a "justiciable interest?" 611 S.W.2d at 419. Unfortunately, the *Hooks* opinion does not reveal the meaning of "justiciable interest," an obvious conclusion, nor how such conclusion was extrapolated from the pleadings, the facts and the two statutory provisions governing judicial review in that case. For what must we look when we consider "person aggrieved" in conjunction with any other relevant term describing who may have judicial review? *Hooks* does not tell us expressly. Given the circumstances of the *Hooks* case, the Supreme Court's decision in favor of standing could have been based upon the proposition that the Hooks had standing or a justiciable interest simply because they were "aggrieved" and "affected"[5] by the agency decision in that case *as a matter of law, even under the "special injury" test.*[6]

5. The adjectives used to describe those persons who could appeal from the agency decision in the *Hooks* case: Section 5.351(a), Texas Water Code, governing appeals from the Department of Water Resources; and TAPTRA, § 19(a), governing generally appeals taken from administrative agencies.

6. The administrative record and the district court pleadings in the *Hooks* case affirmed that the Hooks were riparian landowners of a tract downstream from a proposed sewage treatment plant. Section 26.028 of the Texas Water Code required notice of agency proceedings, directed at obtaining a permit to build the plant, be given to those "persons who in the judgment of the commission *may be affected* by (the application for the permit)" (emphasis added). The agency hearing officer designated the Hooks as persons who may be affected by the agency proceedings. After receiving the notice, the Hooks filed a pleading in the agency, asserting that they owned land "adjacent to and downstream to (sic), the [proposed] point of discharge" and that they would be "affected if the permit is issued." While their district court pleadings did not allege in so many words that they were "affected" or "aggrieved" by the agency decision adverse to them, such was the tenor and thrust of their pleading in that court, to which no exception was taken.

The Court of Civil Appeals opinion at 602 S.W.2d 389 (Tex.Civ.App.—Austin 1980), denied that the Hooks had standing to maintain the suit. The Court's opinion admits that the Hooks were "proper parties to participate in

the permit hearing" in the agency, evidently a reference to the statutory requirement that persons "who may be affected" by the proceedings must be given notice thereof. The Court denied the Hooks a right to participate in the judicial review of those agency proceedings, however, on the basis that they had not *proved by evidence*, offered either at the agency or the district court level, that they had suffered any special injury. Hence, the Court of Civil Appeals reasoned, they had not shown themselves to be "affected" or "aggrieved" by the decision of the agency to grant the permit.

The Court's opinion reads in part as follows: "The record is completely silent as to how the (Hooks) might be affected by the issuance of the permit. There is no evidence of the size of the Hooks' property, the location of appellants' residence in relation to the stream, or what affect, if any, they believe or anticipated the proposed wastewater discharge might have on their agricultural grazing land." 602 S.W.2d at 391.

This reliance upon proof of the particulars of any threatened injury is understandable in view of the requirement of the Supreme Court in *Scott v. Board of Adjustment, supra*, and *City of West Lake Hills v. State ex rel. City of Austin, supra*, that one who would appeal an administrative decision "must *allege* and *show how* he has been injured or damaged other than as a member of the general public ..." 405 S.W.2d at 56 (emphasis added).

The Supreme Court, on writ of error in the *Hooks* case, apparently determined as a matter

In *City of Houston v. Public Utility Commission*, 599 S.W.2d 687 (Tex.Civ.App.— Austin) *writ ref'd n. r. e. per curiam*, 610 S.W.2d 732 (Tex.1980), the Supreme Court of Texas cast further doubt upon the status of the "special injury" requirement by stating, without explanation, that it agreed that the trial court had properly dismissed the plaintiff's suit for want of standing. It refused the application for writ of error, no reversible error, stating that its action "is not to be interpreted as approving or disapproving the holding of the court of civil appeals that a party must demonstrate 'special injury' to be entitled to judicial review under the Public Utility Regulatory Act," a reference to Tex.Rev.Civ.Stat.Ann. art. § 1446c, § 69 (1980), which reads in pertinent part as follows:

> *Any party* to a proceeding before the commission (the Public Utility Commission of Texas) is entitled to judicial review under the substantial evidence rule. [emphasis added].

The Court of Civil Appeals decision is reported at 599 S.W.2d 687 (Tex.Civ.App.— Austin 1980). That opinion reveals that the City of Houston sought judicial review of a Commission rate order which set electric rates for areas near Houston but outside its municipal limits. The City had been allowed to participate in the agency proceedings on the basis that it was "an interested regulatory authority." It appealed the rate order to the district court on that basis and before the trial court dismissed the City's suit for want of standing, it granted the City an opportunity to amend its pleadings to show a "justiciable interest." The City averred by amended pleading that it was a customer of the power company involved, subject to the rates set by the Commission, albeit in *another* rate proceeding aimed at setting intracity rates. The trial court entered a final judgment dismissing the cause. The City appealed.

The Court of Civil Appeals affirmed the dismissal on the basis that the City, on either ground, still lacked "standing to challenge the utility rate order promulgated by the PUC," adding:

> (We) find that, as a matter of law, appellant did not have a 'justiciable interest' in an administrative hearing which determined appellees' (the power company's) rates only in areas outside appellant's corporate limits.

\*　　\*　　\*　　\*　　\*　　\*

For a party to be aggrieved by a final decision setting utility rates, he must allege and show how he has been injured or damaged other than as a member of the general public. Only then may he seek to enjoin the ratemaking actions of the PUC. *Scott v. Board of Adjustment*, 405 S.W.2d 55 (Tex.1966); *City of West Lake Hills v. State ex rel. City of Austin*, 466 S.W.2d 722 (Tex.1971).

\*　　\*　　\*　　\*　　\*　　\*

As there is no statement of facts on file this cause, we must also assume that no special injury was presented to the trial court at hearing. [599 S.W.2d at 690].

---

of law from the record that the Hooks had standing, being both affected by the agency proceedings and aggrieved by its decision. It cites solely the matters revealed by the record: the Hooks were served with notice of the agency proceedings because they might be affected: the administrative record revealed that if the permit be granted, large quantities of water would be discharged daily through the Hooks' property; and the agency's briefs conceded that the Hooks "are affected or aggrieved by the Department's order."

In the *Hooks* case, the Supreme Court rather plainly has done something with respect to the law of standing so that it is different from what existed before. It has been suggested that the Court has abandoned the "special injury" requirement, at least in cases involving the judicial review of administrative agency decisions. *See* 33 Baylor L.Rev., *supra* at 224. How this may be done in the face of the constitutionally-based prohibition against advisory opinions has not been explained. Moreover, the Supreme Court's reference to the large quantities of water to be discharged through the Hooks' property, if the permit be granted, one of the very few bases for the decision, demonstrates a dramatic threat of injury or damage markedly different from any threatened against the general public, most of which own no land at all. Did *Hooks* actually abandon the requirement of "special injury" or did it simply find that the requirement had been satisfied in that case as a matter of law?

It is difficult to ascertain the meaning of the *per curiam* opinion of the Supreme Court, except on the basis that the Court agreed with the Court of Civil Appeals in part: that the City lacked a "justiciable interest" as a matter of law determinable from the applicable statutes, the pleadings and the administrative record.[7]

The significance of the *City of Houston* decision lies in the fact that the Supreme Court there agreed that the City lacked standing to bring the suit for judicial review, *despite the literal wording of PURA § 69*, which section, by clear and explicit language, conferred the right to judicial review upon the City as a *mere party* to the Commission proceeding. The Supreme Court thus recognized, but did not articulate, *some* limitation upon the legislature's power to confer jurisdiction upon the district courts of the State to entertain administrative "appeals." It may be that the Court considered the ultra-liberal grant of judicial review in PURA § 69 to be limited by the "person aggrieved" provision in TAPTRA § 19(a), but this is unlikely in view of that statute's provision that the right of judicial review there granted is merely *cumulative* of a similar right granted in any other statute. The obvious alternative basis for restricting the power of the legislature to confer the right of judicial review lies in the stricture imposed by the constitutionally-based prohibition against the rendering of advisory opinions. Some impact in fact upon the plaintiff, as a result of official action, is absolutely necessary to satisfy the Constitution's limitation upon

the judicial power. With respect to the ultra-liberal grant of standing attempted by PURA § 69, ("any party" to the agency proceeding), the *City of Houston* case contracts the literal scope of section 69 and makes it coextensive with the limits permitted by the Constitution, whatever they are. It is obvious that the phrase "person aggrieved" contained in TAPTRA, § 19(a) would be subject to the same interpretation and limitation. What, then, are the Constitutional limits to a legislative grant of standing to maintain a judicial department proceeding in administrative "appeals?"

While it has been said that the Court has abandoned the "special injury" requirement, 33 Baylor L.Rev., *supra* at 224, this can be true only within the context of the constitutional limit spoken of above. And one sentence in *Hooks* gives some indication that the Court may intend a simple ultimate test governing the rule of standing and the interpretation of statutory grants of the right of judicial review. It is this: "Unquestionably, the Hooks *will be affected* by the Department's action." 611 S.W.2d at 419. While this likely refers to Texas Water Code § 5.351, defining who may have judicial review from decisions of the Department of Water Resources, the sentence ignores the legal injury requirement ("person aggrieved") implicit in the wording of TAPTRA § 19 and literally states a proposed rule of standing advocated by one scholar: "The basic law of standing should be a simple proposition cutting both ways: *one who is adversely affected*

---

**7.** Though neither appellate opinion says as much, the power company evidently sought a rate increase for its service to customers outside the municipal limits in a proceeding under Article VI of the Public Utility Regulatory Act, Tex.Rev.Civ.Stat.Ann. art. 1446c, §§ 37–48 (1980). The framework provided for utility regulation in PURA requires that distinctions be made between electric services furnished within and without municipal limits; in fact, municipalities may be the initial rate-setting authority within their limits, their decisions being subject to review by the Commission.

With respect to the Commission proceedings directed at setting rates *outside* the municipal limits of the City of Houston, it is clear that the City was affected no differently than the public

generally; however, the relevant section of PURA, § 69, provides the most liberal grant of the right to judicial review: "any party" to a Commission proceeding is, by that section, granted such right. However, when this provision is interpreted with the "persons aggrieved" provisions of TAPTRA, § 19(a), the Court of Civil Appeals could quite properly conclude as a matter of law that the City could not be affected at all by a proceeding aimed at setting rates for areas that lay outside the municipal limits, where the City was neither a customer nor an "interested regulatory authority" in any direct sense. With respect to those rates, the administrative proceeding raised only a political question insofar as the City was concerned.

*by governmental action has standing to challenge it, and one who is not adversely affected lacks standing."* Davis, Administrative Law, § 22.20 (Supp.1980). Professor Davis admits that the problems of determining who is adversely affected are often quite difficult, and may be consistently answered only with reference to a body of case law built upon his suggested basic test. Moreover, the *City of Houston* case imposed an unspecified limit upon legislative grants of standing in a case where the city could *not* have been adversely affected by the agency decision as a matter of law.

With respect at least to administrative "appeals" from agency decisions, we believe the Supreme Court has, in effect, adopted as the basic law of standing the test of whether the one seeking judicial review is adversely affected, in fact, by the agency decision from which he seeks to "appeal." The word "aggrieved" inevitably suggests that TAPTRA § 19(a) was intended to require that the one seeking judicial review in such a case should have suffered a legal injury, as a result of some legal wrong perpetrated by the agency. In the *Hooks* case, however, the Supreme Court chose the word "affected" as the threshold of standing, from whatever source the Court drew upon for that word, tacitly establishing a lesser consequence of the official action complained of as the criterion for standing in that case. The necessary implication is that the word "aggrieved" did not impose any greater consequence of the official action, as a condition for standing in the judicial department, than did the word "affected." In view of *Hooks*, the term "party at interest" at issue in the case before us, is not to be construed as setting a *higher* threshold for judicial department standing than the word "affected"; in fact, the sense of the term "party at interest" suggests some still lower level of impact upon the person seeking judicial review. In addition, the liberal view of standing clearly established in *Touchy* and *Texas Association of Steel Importers, Inc.*, for cases not involving judicial review of an agency's adjudicatory decisions, reinforces our view that the Court, in *Hooks* and *City of Houston*, has

set as a minimum condition for standing that the one seeking judicial review must be "affected adversely" to *some* degree by the official action of which he complains. Is this minimum condition consistent with the Constitution?

Nothing said by the Supreme Court in *Hooks* or *City of Houston* addresses the issue of minimum standing requirements to be derived from the constitutionally-based doctrines relative to advisory opinions and political questions. The latter decision does make it clear that something more than a legal error by the agency is required for access to the courts, that is, some effect in fact upon the plaintiff is required; one is not entitled to judicial review merely because he was allowed to participate as a party in the agency proceedings. We need not attempt any generalization in that regard, even if one could be stated intelligibly, but it is quite apparent that the adverse effect relied upon must be sufficiently grave, and involve a sufficiently important interest, to satisfy these constitutionally-based strictures upon the power of the judicial department. In the case now before us it is also apparent that some of appellants' ostensible members could be adversely affected by the higher rates and that appellants rely upon that effect to establish their standing as organizations, claiming no adverse effect upon their organizations, as organizations. In short, appellants seek to *represent* their members who are adversely affected by the agency decision and justify their standing upon their members' exposure to higher shipping rates.

*An organization's representational standing on judicial review of an administrative decision, where the organization itself has not been adversely affected.* May an organization invoke the reviewing powers of the judicial department under TAPTRA §§ 19, 20 (or another statute granting the right to seek judicial review of administrative decision) to *represent* the interests of third persons, its members in this case, who have allegedly been affected adversely by official action taken in the agency proceedings? TAPTRA itself presents no barrier

to the organization's role as representative in the agency proceedings. It is quickly apparent, however, that the "person aggrieved" provision of TAPTRA § 19 and any other statute purporting to give the right of judicial review must be interpreted in light of the constitutionally-based prohibition against the judicial rendering of advisory opinions. This prohibition obviously poses a formidable barrier to the claim of one who would represent another in such judicial review, not having been affected himself by the agency action.

Our Texas jurisprudence contains, so far as we are able to find, nothing that directly addresses the issue of representational standing in the context presented here. We have, for that reason, discussed at length the general doctrine of standing in our State, intending that we may draw from it some general principles to assist in deciding the question of representational standing raised by appellee CMFA.

■ In the context of judicial review of administrative decisions under TAPTRA § 19 and 20, and under separate statutes conferring the right of such review from the specified agencies there named, we find that *Hooks v. Texas Department of Water Resources, supra,* and *City of Houston v. Public Utility Comm'n, supra,* establish the proposition that one must be adversely affected in fact, or such a result must be threatened, before he may maintain a judicial proceeding which challenges on "appeal" the official action of which he complains. The Hooks stood to be adversely affected in fact by the agency decision; the City of Houston could never be so affected in fact, under the statute governing rate proceedings in the Public Utility Commission and under the pleadings the City relied upon for standing (that it was an interested regulatory authority, and by amendment, that it was a utility customer in another rate proceeding).

■ Outside the context of judicial review of administrative decisions, the adverse effect relied upon as a basis for standing need not rise to the severity of the ordinary legal injury, and may, indeed, be very slight and even somewhat speculative, indirect and remote, *provided* the legal wrong complained of involves a substantial public interest. *Touchy v. Houston Legal Foundation, supra* (involving no official action but a substantial public interest and a legal wrong); *Texas Highway Comm'n v. Texas Association of Steel Importers, Inc., supra* (involving official action claimed to be illegal coupled with a substantial public interest). In *Touchy* and *Texas Association of Steel Importers, Inc.,* it is apparent that the public interest threatened with harm furnished the motivation for deciding the legality or illegality of the action complained of and the slight impact upon the plaintiffs was sufficient for standing when considered in conjunction with other factors: the causal connection between the legal wrong and the slight impact was plain; the affected public interest was substantial; judicial relief was sufficient and effective to redress the plaintiffs' grievances; any official duty was nondiscretionary; and the plaintiffs' specialized *interest* in the subject matter of the suits promised an effective prosecution of the proceedings. The overall effect of allowing a plaintiff to bring a suit in these circumstances is to avoid the anomaly created by the general rule that made "special injury" the *sine qua non* of standing to challenge official action: Where a legal wrong committed by a public agency affects everyone alike it may not be challenged in the judicial department, no matter how flagrant the wrong and how severe or harmful the impact upon the public, the remedy lying instead at the ballot box, even though this "remedy" is infrequent, unsystematic and colored by many extraneous factors. The rule of *Touchy* and *Texas Association of Steel Importers, Inc.,* allows the judicial department to approach its constitutional limits, but by requiring some effect upon the plaintiff, coupled with the presence of the other factors, assures that the judicial department will stay within its bounds and competence and not assume a supervisory role with respect to the other departments of government.

The foregoing examples from our jurisprudence indicate that in some circumstances the judicial department may constitutionally adjudicate a case brought by a plaintiff founded upon an official legal wrong which occasions some adverse impact, however slight, upon another or even upon a large segment of the public.[8] Implicit in several of the circumstances mentioned above is some exercise of judicial discretion in allowing a plaintiff to maintain a suit based upon an adverse effect caused another by the defendant's legal wrong, even if the case involves a controversy within the constitutional limits of the judicial department to adjudicate. Whether the public interest is "substantial,"

whether judicial relief is sufficient and effective, and whether the nature and special interest of the plaintiff promise an effective prosecution of the proceedings could involve jurisprudential or court-imposed limitations upon allowing A to sue C based upon a legal wrong that has an adverse impact upon B. But we believe the public interest is obvious in the present case; indeed, judicial review of this ratemaking proceeding is expressly authorized by article 911b of the Motor Carrier Act and TAPTRA §§ 19 and 20. Moreover, the judicial relief authorized by TAPTRA § 19 is obviously sufficient for the case as a matter of law. The exercise of judicial discretion is

**8.** The distinction to be made is between the existence of *some* adverse impact upon the plaintiff, however slight, and *no* adverse impact at all. The distinction is not between some slight impact and an impact almost imperceptibly larger. Moreover, the adverse impact or effect refers to some *factual* consequence of official action, not one that is *purely* abstract or theoretical. That the impact is slight indeed, or diffused greatly among many persons similarly situated, does not render the consequence of official action theoretical or abstract. As indicated above, the precise limits of the various aspects of standing must await the establishment of a sufficient body of case law built upon and decided in the context of the principles we have discussed and the "adverse effect" test we believe the Supreme Court has set. It should go without saying that any adverse impact must be caused by a legal wrong before it is actionable. Moreover, what we have stated in this opinion is not to be transported out of context, that is, it is limited to suits that challenge official action.

What if the adverse impact of a clear legal wrong committed by an official or an agency is diffused to the maximum extent, affecting alike all members of the body politic? May any interested citizen maintain a suit for mandamus or injunction to vindicate the public interest? After all, if a slight impact is sufficient for standing, why require any adverse impact at all? A respected authority advocates that point of view and would allow a "citizen action" to challenge the legal wrong and vindicate the public interest in having the law obeyed in any particular sufficient to attract the attention of a citizen who troubles himself to challenge it. Jaffe, *supra*, note 4, at chapter 12. Our Supreme Court has, however, rejected this view, either expressly or by implication. *Texas Association of Steel Importers, Inc., Touchy* and *Hooks*, while they liberalized greatly the opportunity for standing to challenge official action,

nevertheless limited the opportunity for standing to some discreet segment of the public or an individual having a special interest in the subject matter of the suit, coupled with some slight impact, in circumstances that presented a public issue of some importance: those individuals connected with imported construction materials; members of the legal profession interested in preserving their profession from degradation; and those individuals whose property stood to be physically affected by the discharge of water from the sewage-treatment plant. The *City of Houston* decision is consistent with this view of the Supreme Court and depends somewhat upon it. The group with the obvious special interest in that case consisted of those customers of the power company situated outside the municipal limits, that is, those customers who stood to actually pay the utility rates set in the agency proceedings and decision challenged on judicial review.

While the appellant organizations in the present case are somewhat situated as was the City of Houston, in not being exposed to actual payment of the rates established by the Commission here, it is readily apparent from the pleadings in this case that appellants do not seek to represent the public generally and its interest in lower rates, as the City of Houston did, and these appellants allege a connection with those affected in fact, their members, that the City of Houston did not allege with respect to the utility customers who resided outside the municipal limits. (*See* 599 S.W.2d 690). The facts alleged by the City of Houston could not overcome the rather marked distinction drawn in PURA between utility regulation inside and outside of municipalities.

The fact that the public interest was a factor in the standing decisions in *Touchy* and *Texas Ass'n of Steel Importers, Inc.*, should not be confused with what we have said above with respect to a would-be plaintiff who seeks to *represent* the public.

not called for in such instances. Whether the nature and interest of the plaintiff promises an effective prosecution of the proceedings, for example, *does* involve an exercise of judicial discretion in this particular case.

Recognizing that appellants are not seeking judicial review based upon an adverse effect upon themselves, under TAPTRA § 19 and Motor Carrier Act § 20, we point out that there are virtues in allowing representative standing in such "appeals." [9]

With respect to *res judicata* as a barrier to representational standing, we believe that the appellants' pleading and showing that they represent, and are authorized to represent, specifically named members of their associations in the judicial review of the Commission decision, will obviate any problem of successive "appeals" from the same agency decision by many members.

While each appellant association in this case is a membership organization, and our discussion is necessarily in that context, we are not to be understood as limiting the role of organizational representative standing to organizations having a membership; nor are we to be understood as limiting such standing to administrative "appeals," or ju-

dicial review of contested-case adjudications in administrative agencies. For purposes thought by them to be sufficient, many organizations interested in public issues choose not to have a membership—only supporters, adherents, directors, and officers. (*See* Tex.Rev.Civ.Stat.Ann. art. 1396–2.08 (1980), which provides that a non-profit corporation, a legal entity, may have members or not, as it chooses.) Requiring the participation of one or more members as parties to the suit would, in our view, be redundant once the theory of an organization's *representative* standing is adopted. The nature of the case may, of course, require the presence of members. *See generally*, 1974 U.Ill.L.F. 663, *supra*, at 664. While the present case is in the context of judicial review of an adjudication of a contested case in the Commission, much of what we have said would be applicable to an original proceeding in district court where a plaintiff's standing to attack an official action, claimed to be illegal, is challenged. Nevertheless, a discussion of organizational standing in such a case is not necessary to the consideration and disposition of the case before us.

**9.** One virtue is that of conforming the judicial process to the reality of contemporary life, where associations are formed to advance what a few people think is in their interest or in the public interest. Some are formed for the express purpose of litigation in the public interest and are granted tax-exempt status for that reason. With respect to those organizations which have "members," it has been said that a recognition of representational standing would afford benefits to the judicial system itself, and not just to the public: The adjudication of the claims of many individuals simultaneously avoids repetitive litigation, thus saving the courts time, bother, and expense and reducing the likelihood of conflicting decrees; and the court is enabled to make a judgment based on a more complete appraisal of the interests involved which lessens the probability of inaccurate fact finding. With respect to any form of organization, whether there exists a membership or not, other benefits may accrue from representational standing:

"(T)he financial strength of the organization practically assures better representation than does reliance on the isolated individual's funds or his hope that a class action will be a fundraising mechanism for support of his

suit. Besides financial resources, organizations often have specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiff's lack. Moreover, an organization is not subject to the diversions which often affect individual interests. An individual's interest in the environment, in employment matters, in housing, or in any other sphere of his existence competes with other interests. When delegated to an organization, however, the individual interest is isolated from competing interests, and a purification is accomplished. An individual class plaintiff's representation of the class can always be distorted by individual circumstances which affect his zeal in prosecuting the suit, his perception of the common problem, or his resources. The organizational purification of individual interests tends to screen out such idiosyncratic factors. Consequently, organizational suits may provide better representation than class actions and courts that allow class actions should allow organization suits." Gronemeier, "From Net to Sword: Organizational Representatives Litigating Their Members' Claims," 1974 U.Ill.L.F. 663, 669.

## HOLDING

■ With respect to the kind of representational standing claimed by appellants in the present case, we hold that they may appear and prosecute this administrative "appeal" if they are able to establish the following to the satisfaction of the trial court as a discretionary matter with that court:

1. The existence of an immediate or threatened adverse effect of the Commission decision upon appellants' members, or any of those members, the affected members being specifically identified by pleading and it being shown to the satisfaction of the trial court that the appellants are authorized to represent such members on judicial review.[10]

2. A fairly traceable causal connection between the adverse effect and the Commission decision.

3. A reasonable certainty that the remedy requested by appellants will inure to the benefit of those members actually affected by the Commission decision.

4. Appellants' members, or any of them, named in appellants' pleading and shown to have authorized appellants' representation in the present "appeal," would have had standing in their own right to take the "appeal."

5. The interests of appellants' members sought to be protected in this "appeal," are germane to the associations' purposes.

6. The nature of the issues to be decided and the relief requested do not require the participation of individual members of any of the associations which seek organizational standing to raise such issues and request such relief.

It seems fair to make the matter discretionary with the trial court and to place the foregoing burden upon the appellants because of the rather extraordinary request they have made to represent another, and because appellants' right to do so has been challenged.[11] The burden is not unduly great and we hold that within the limits permitted by the Constitution, the trial court may utilize the merits of representational standing while avoiding the formalities of a class action proceeding under Tex. R.Civ.P. 42 where that character of proceeding is neither necessary nor desirable.

It is obvious that the matters stated above are adapted in large degree from the federal cases dealing with representational standing in cases like the one now before us. *See Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); and *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). While we do not wish to invite into our State jurisprudence the difficulties, complexities, unpredictability and criticism that attend the federal decisions with respect to the issue of standing,[12] we believe our very limited reference to the reasoning of the federal deci-

---

10. We suspect that the adverse effect relied upon will be in the nature of a pecuniary effect. This is not, of course, the only basis for standing to challenge an official action. Interests other than financial interests may afford a basis for standing where official action has an adverse effect upon such things as the environment, housing, health, safety, civil rights, public education, occupations and similar areas of life affected by government action.

11. The issue of standing should, of course, be determined early in the trial court proceedings if not established still earlier in the agency proceedings and revealed as a matter of record in the trial court on judicial review. *See* Tex.R. Civ.P. 93(b), (c), (e). Within the boundaries of its constitutional jurisdiction, the trial court could presume the propriety of the plaintiff's standing until it is challenged by the opponent's motion to dismiss or by a plea in abatement. If the plaintiff's pleading calls for an advisory opinion or the decision of a political question, the trial court should dismiss the suit on its own motion, giving opportunity to amend the pleading, of course. For the procedural handling of the standing issue in the agency and in the trial court, see generally the suggestions contained in 33 Baylor L.R. 215, *supra*, at 233–235.

12. See Davis, *supra*, and the succeeding supplements to chapter 22 of the original treatise.

sions relating to representational standing, exercised by organizations such as appellants, is justified. The federal courts exercise the federal judicial power under the limitations upon that power specified in Article III of the Constitution of the United States, including that of section two of the Article, the "case or controversy" limitation, which is analogous to the limitation imposed by our State's constitutionally-based prohibitions against giving advisory opinions and deciding political questions.

As noted in the beginning, none of the members of the appellant organizations were named or admitted as parties to the Commission proceedings and, of course, none are parties to the judicial review sought here. Additionally, the record before us does not reflect that appellants established the essential circumstances for an organization's representational standing in the judicial department, outlined above. As a result, there was no plaintiff with standing in the district court so far as the record on appeal shows.

Ordinarily, the judgment of the district court, being rendered by a court of general jurisdiction, is entitled to a presumption not only of correctness but a presumption as well that it was within the jurisdiction of the court to render. In the present appeal, however, judgment of the district court was sought and rendered under TAPTRA solely, in a special statutory proceeding, wherein the district court exercises special statutory powers in a special statutory manner, and not according to the course of the common law. In such cases, the district court judgment is not entitled to the ordinary presumption, either as to personal or subject-matter jurisdiction and it was necessary for appellants to establish affirmatively in the record (1) that they were affected in fact by the Commission's order from which they "appealed" to the district court; or, (2) that the essential elements of representational standing existed as outlined above. *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084 (1926).

The question remains whether the circumstances necessary to standing, and hence the facts essential to an exercise of judicial department power, must be established in the agency or in the district court.

TAPTRA § 19(d)(2) would allow appellants to request leave to adduce additional evidence in the Commission after remand by the district court, that agency being allowed an opportunity to modify its findings and decision in light of such new evidence. We do not believe that to be necessary in the present case. Notwithstanding that TAPTRA § 19(d)(3) limits judicial review to the administrative record, except in circumstances not applicable here, we do not doubt that a district court has the inherent power to permit the parties to adduce before it facts pertaining to whether or not the district court has power to act in the premises—in this case, whether appellants have standing to invoke the judicial power under the provisions of TAPTRA as representatives of their members who are affected in fact by the agency decision. *Texas & Pacific Railway Co. v. Gulf, Colorado & Santa Fe Railway Co.*, 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578 (1926). We hold, theretofore, that on remand, the district court has the power to hear evidence and determine whether it has jurisdiction of the case brought by appellants for judicial review under TAPTRA, which depends of course upon whether the appellants show themselves entitled to standing.

Lastly, we hold that this case is a proper one to be remanded in the interest of justice, and we so order, the question of appellants' standing to be determined by the district court in conformance with our opinion. *Scott v. Liebman*, 404 S.W.2d 288 (Tex.1966).

## ON MOTION FOR REHEARING

In their motion for rehearing, appellants argue the proposition that the trial court had before it sufficient evidence to find that appellants should be allowed to prosecute the administrative appeal in lieu of their members doing so. So far as we are able to determine, such evidence is not contained in the record on appeal and, moreover, the evidence said to have been

presented to the trial court manifestly does not address all of the elements we have held to be essential to the decision whether to allow an association to represent the members who are actually affected by the administrative decision.

■ In their motion for rehearing, appellants argue that seven of their members testified at the Commission hearing that they would be adversely affected by increased shipping rates. The hearing records of the Commission, made part of the appellate record, do not show that the individuals referred to were members of any of the appellant organizations. Moreover, there is in the record no indication of the shippers any appellant organization represents. Instead, appellant appends to its motion for rehearing a list of each appellant's membership. While these three lists were also handed to us in oral argument, they were not included in the appellate record nor have the appellants made any motion to supplement the transcript in this respect. We therefore may not consider them on appeal.

Appellants next argue that the legal status of all three associations is made clear by the record on appeal, referring to our footnote comment that the trial court should inquire whether the appellants were legal entities entitled to appear in court as such. The record reflects, however, that only Texas Industrial Traffic League is identified as a membership non-profit corporation. The other two appellants, while listed as parties before the Commission, are not further identified or described in the record before us as membership associations entitled by the terms of Tex.Rev.Civ.Stat.Ann. art. 6133 (1970) to maintain a lawsuit.

Appellants desire that the court take "notice" of the documents tendered to us but which are not included in the appellate record. These matters are not, however, of a nature that the Court may, under the doctrine of judicial notice, assume to be true without proof.

■ Moreover, the record would not support an implied finding of standing even if the foregoing matters were included in the record on appeal or otherwise considered by us. While standing is usually presumed until challenged, once that challenge is made, as it was here, appellants must show that they are the proper parties to maintain the cause of action averred, here a statutory "appeal" from an administrative decision. *Holland v. Taylor*, 153 Tex. 433, 270 S.W.2d 219 (1954). Appellants have not, for example, presented evidence in the trial court with an attendant decision by it to the effect that appellants are authorized to represent their affected members on judicial review of the Commission decision; that the interests of these members sought to be protected are germane to the appellants' organizational purposes; and that the nature of the issues to be decided in the administrative appeal does not require the participation of the individual members actually affected by the Commission decision.

■ Appellants contend in reply that we err in holding that they must meet additional tests before they may have standing under section 20 of the Motor Carrier Act. We disagree. While the judicial review provisions of that Act must be followed, in orchestration with section 19 of TAPTRA, the point made in this decision is that the legislature, by statutory enactment, may not confer upon the courts of the State the power to determine a political question or give an advisory opinion. Therefore, the overriding issue of constitutionality must also be orchestrated with section 19 of TAPTRA and any statute which gives the right of judicial review from the decisions of particular agencies, such as the Motor Carrier Act does in its section 20. Since appellants admit the obvious fact that they themselves are not affected by any rate increase ordered by the Commission, while attempting to invoke for themselves the provisions of TAPTRA section 19 and Motor Carrier Act section 20, we have placed upon these statutory provisions an interpretation which implements the legislative intent in a manner that in our view satisfies the constitutional limitations upon the judicial department. Hence, we have imposed the

additional requirements spoken of by appellants. These requirements have the incidental effect of judicial economy in that they allow the simultaneous disposition of the numerous administrative appeals which might otherwise be taken separately by members who are actually affected by an agency action, at least to an extent sufficient to excite their interest in judicial review. Moreover, these additional requirements also have the incidental effect of allowing any affected members to share the cost of such judicial review by having their representatives, the associations, maintain the action, thereby avoiding the undesirable situation where no individual member feels able to pay the cost of judicial review of an erroneous agency order, with the result that an injustice is perpetuated by default. We therefore view the additional requirements as being essential to the constitutionality of section 20 of the Motor Carrier Act and TAPTRA section 19 and incidentally desirable for the aforesaid public policy reasons. Lately, we believe these decisions are in harmony with the decisions of the Supreme Court of Texas relative to standing, as discussed above at length.

Appellants refer us to *Texas Highway Commission v. Texas Association of Steel Importers, supra, Director of Department of Agriculture and Environment v. Printing Industries Association of Texas, supra*, and *Touchy v. Houston Legal Foundation, supra*, three decisions of our Supreme Court discussed in our opinion. Appellants do so to support their suggestion that the standing of a representative organization is based upon the same standing factors as are applicable to individuals. None of the three decisions, it should be pointed out, address the issue of representational standing. The appellants' argument amounts to no more than this: because the Supreme Court omits to mention representational standing in a case where an organization is a party on appeal, and the question of representational standing thus *could* have been raised, such is tantamount to an affirmative declaration and holding on the legal rule, princi-

ple or proposition that an organization, not affected itself by an agency decision, may nevertheless within constitutional limits invoke the jurisdiction of the district court. We are, in fact, requested to infer from the Supreme Court's silence in those three decisions the promulgation of a legal rule, principle or proposition to the effect argued for by appellants. We find this contention extremely illogical, and reject it. The motion for rehearing is overruled.

Reversed and Remanded on Motion for Rehearing.

PHILLIPS, Chief Justice, dissenting.

I withdraw my former opinion and submit the following:

I respectfully dissent and would hold these appellants have the requisite standing to bring suit.

Section 20 of the Motor Carrier Act [1] states "if any motor carrier or other party at interest be dissatisfied with any decision . . . adopted by the Commission . . . such dissatisfied person . . . may file a petition . . . in the District Court . . . against said Commission as defendant."

Appellants Leagues and Traffic Conferences representing a plethora of shippers, appeared and pleaded their case, first before the Railroad Commission and subsequently before the trial court. Neither forum rejected jurisdiction on the standing issue.

Some eight to ten individual shippers testified, in detail, as to how the rate changes sought would affect their livelihoods and cause them economic harm. This is the *sine qua non* for any rate hearing on this earth. Each shipper who testified could have brought an appeal in his own right, under section 20 of the Texas Motor Carrier Act. When an association brings suit based solely on the injuries inflicted on its *members*, it must provide proof: 1) the associations' members have standing to sue in their own right; 2) the interests the association seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted

---

1. Tex.Rev.Civ.Stat.Ann. art. 911b (1964).

nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Moreover, their individual appearances at the Railroad Commission hearing, as witnesses for appellants, fully confirms appellants' authority to represent them in this matter.

There is no question but that associations, such as those at bar, have standing to bring suits in the Texas courts.[2] Ironically, appellee Common Carrier Motor Freight Association is one of these.

A statute should be given a fair and sensible construction in order to carry out the purpose for which it was enacted and should not be construed in such a manner as to nullify or defeat its purpose. *Salas v. State*, 592 S.W.2d 653 (Tex.Civ.App.—Austin 1979, no writ).

The Texas Administrative Procedure and Texas Register Act (Tex.Rev.Civ.Stat.Ann. art. 6252–13a) is in accord with this holding. Section 19(a) of APA provides persons "aggrieved" by a final decision are entitled to judicial review. See *Hooks v. Texas Dept. of Water Resources*, 611 S.W.2d 417 (Tex. 1981).

**2.** *Dept. of Agriculture and Environment v. Printing Indus. Ass'n*, 600 S.W.2d 264 (Tex. 1980); *Texas Highway Commis. v. Texas Ass'n of Steel Importers*, 372 S.W.2d 525 (Tex.1963).